Jack W. McCRARY et al., Plaintiffs-Appellees,

v.

WEYERHAEUSER COMPANY, Defendant-Appellant.

No. 25377.

United States Court of Appeals, Ninth Circuit.

Feb. 29, 1972.

Rehearing Denied March 30, 1972.

Garry R. Bullard (argued), David P. Miller, of Davies, Biggs, Strayer, Stoel & Boley, Portland, Or., Oliver Malm, Tacoma, Wash., for defendant-appellant.

John J. Haugh (argued), Frank H. Pozzi, of Pozzi, Wilson & Atchison, Portland, Or., for plaintiffs-appellees.

Before: CHAMBERS, JERTBERG and KOELSCH, Circuit Judges.

JERTBERG, Circuit Judge:

In this action nineteen employees of appellant in the Coos Bay-North Bend, Oregon area joined in an action against appellant for overtime pay, penalties and attorney's fees which they contended were due them by virtue of Section 7 of the Fair Labor Standards Act of 1938, 29 U.S.C. § 207(a).

Following trial to the court, the appellees recovered judgment from appellant for unpaid overtime pay amounting to $8,712.78, plus an additional $8,712.78 in the form of liquidated damages, plus $7,000 in attorney's fees.

Each appellee, during the period in question, had two different job assignments during his basic work day. One job assignment was that of driving a crew bus [crummy]. These buses were used each day to transport loggers from the Coos Bay-North Bend area to logging sites, generally some forty miles away, and return them to the Coos Bay-North Bend area at the end of each working day. The other work assignment of each appellee was his regular job in direct logging activity during the work day at the logging site.

Each appellee received two different rates of pay. One rate was for his time spent driving a crew bus, and a different rate for time spent at his regular job in the logging operations. The pay rate received for crew bus driving was lower than the pay rate received for the job at logging sites. Except for shift differential, loggers who did not drive crew buses received no hourly rate for the time spent being transported to and from the logging site.

During the period in question appellant paid each appellee an overtime rate for work in excess of eight hours per day, and for all work in excess of forty hours per week. Appellant based the overtime rate on the regular rate assigned to crew bus driving. For example, an appellee who would spend two hours driving a crew bus in the morning, eight hours at the logging site during the day, and two hours driving a crew bus in the evening would receive straight time pay for the eight hours spent doing logging work at the logging site, and four hours overtime compensation for the driving time prior to and following the regular work day. The overtime rate was based solely on the hourly rate established for crew bus driving.

The district court concluded that appellant's method of computing overtime compensation violated the Fair Labor Standards Act and that overtime compensation should be computed by establishing a "regular rate" to be arrived at by dividing the total remuneration for a given week by the total number of hours worked and then paying overtime at one and one-half times this "regular rate."

The threshold question presented to us arises from appellant's reliance on the exception provided in Sec. 7(g) of the Fair Labor Standards Act. The exception provides:

"No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under such subsection if, pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in such workweek in excess of the maximum workweek applicable to such employee under such subsection—

"(1) * * *; or

"(2) in the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established, is computed at rates not less than one and one-half times such bona fide rates applicable to the same work when performed during nonovertime hours; or

"(3) * * *;

and if (i) the employee's average hourly earnings for the workweek exclusive of payments described in paragraphs (1)–(7) of subsection (e) of this section are not less than the minimum hourly rate required by applicable law, and (ii) extra overtime compensation is properly computed and paid on other forms of additional pay required to be included in computing the regular rate."

The record reveals that appellant's operations at its Coos Bay plant began in 1950. Shortly thereafter the Lumber and Sawmill Workers Union became a certified representative of appellant's employees. That Union was the bargaining agent of appellant's employees at Coos Bay until 1958 when the present Union, the International Woodcutters of America, was certified.

Crew buses were utilized by appellant from the outset of its operation, and the method of computing overtime had been in effect since 1950.

The manner in which the crew bus drivers were paid was well known to the appellees and the loggers who were transported to and from work in the crew buses. It was from among such riders that the crew bus drivers were selected by the employer.

Crew bus drivers have always been a part of the collective bargaining unit, and so recognized by every working agreement executed between the parties. Each collective bargaining agreement contained a specific classification covering the rate of pay for crew bus drivers.

The collective bargaining contracts between appellant and its employees did not specify the actual method of computing overtime, but rather provided that all work in excess of eight hours per day,

and all work in excess of forty hours per week, was to be paid at one and one-half times the "rate." The actual wording of the contract with regard to overtime compensation is as follows:

> "All work performed by any employee in excess of eight (8) hours per day or forty (40) hours per week * * * shall be paid for at the rate of 1½."

The issue of crew bus overtime computation was not raised as an issue during any collective bargaining session, including the bargaining period resulting in the 1966–69 bargaining agreement negotiated in June of 1966.

In July of 1966, shortly after the close of contract negotiations, a grievance was filed by the Local Union regarding the manner of paying overtime to the crew bus drivers. At a meeting on July 14, 1966, a memo was presented to the appellant stating that it was the Local Union's position that the existing overtime method did not comply with the Fair Labor Standards Act. The Union demanded that the appellant either modify the method of paying overtime, or increase the crew bus rate just agreed upon and alter the manner in which the crew bus drivers were selected. Appellant took the position that its practice was legal under the Fair Labor Standards Act. It did, however, agree to change the method of selecting the crew bus drivers, and, in an effort to resolve the grievance, agreed to increase the rate paid to the crew bus drivers in an amount less than that requested by the Union. Appellant's compromise proposal was rejected and this action was filed.

The district judge in his findings of fact, *inter alia,* stated:

> "Between 1950 and 1965 there was no written agreement between Weyerhaeuser and its employees regarding the computation of overtime for crew bus drivers. However, although the union contends during that period it did not consider the jobs within the bargaining unit and did not feel it had any power over the method of computing overtime, *the employees' continued acceptance of that method of payment amounted to an implied understanding and agreement to the company's method.*
>
> " * * *.
>
> "I find that in late 1965 a bona fide dispute arose between Weyerhaeuser and its employees with regard to the computation of overtime for the crew bus drivers, *which annulled the implied understanding which had developed over the years."*

In his conclusions of law the district judge, *inter alia,* stated:

> "Section 7(g) (2) provides generally that no employer can be deemed to have violated the Act where he computes the 'regular rate' on a different basis and pays overtime compensation 'pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work.' *That exception does not apply in this case. While the employees' acceptance of Weyerhaeuser's method of computation without protest from 1950 to 1965 can be considered an implied understanding or agreement, this came to an end in late 1965 when the employees rejected the same, began grievance and bargaining sessions, and a bona fide dispute arose."* (Emphasis added.)

We construe the above quoted language contained in the Findings and Conclusions to be a holding by the district judge that appellees' continued acceptance of overtime pay based upon appellant's method of computing the same was, to use the language contained in the exception provided in Sec. 7(g):

> "[P]ursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work,"

and, as stated by the district judge,

> " * * * the employees' continued acceptance of that method of payment amounted to an implied understanding and agreement to the company's method."

From our review of the record we are satisfied that the holding of the district court is correct. Clearly, the appellant's long continued and consistent method of computing overtime pay, and appellees' continued acceptance of the same with complete awareness of appellant's method of computing the same, brings this case within the exception provided for in Sec. 7(g).

Under the threshold question discussed herein, there remains for our consideration whether the district judge is correct in his holding that such agreement and understanding was "annulled" or "came to an end in late 1965 when the employees rejected the same, began grievance and bargaining sessions, and a bona fide dispute arose."

The court's conclusion that the "agreement or understanding" mentioned above was annulled appears to be based upon the fact that after the filing of the "grievance" by the Union on July 14, 1966, the appellant negotiated with the Union, and in the course thereof agreed to change its method of crew bus driver selection in a manner satisfactory to the Union, and offered an increase in the bus driver rate of sixteen and one-half cents per hour. It can hardly be contended that appellant's agreement to change bus driver selection had any relevance or effect on the existing "agreement or understanding" relating to the rate of overtime compensation to the bus drivers. Appellant's offer of an increase in the bus drivers' rate of pay was rejected by the Union, and hence made no change and had no effect on the existing "agreement or understanding" relating to the overtime compensation to the bus drivers,—least of all to annul the same. It is axiomatic to state that an existing agreement or understanding cannot be annulled, or the terms thereof changed, by the unilateral action of one party to such "agreement or understanding."

In our view the district court erred when it concluded that the "agreement or understanding" was "annulled" or "came to an end."

There appears to be no dispute that the record establishes that appellant has met all of the other requirements of Sec. 7(g) (2). Since the appellant has brought its case within the exception provided for in Sec 7(g), and has otherwise complied with the requirements of Sec. 7(g) (2), the judgment appealed from must be reversed.

Our disposition of this appeal renders it unnecessary to discuss other contentions raised on this appeal.

The judgment appealed from is reversed.