Keenan M. SCOTT, et al., Plaintiffs,

v.

CITY OF NEW YORK and the New York City Police Department, Defendants.

No. 02 Civ. 9530(SAS).

United States District Court, S.D. New York.

Aug. 28, 2008.

Thomas P. Puccio, Esq., Law Offices of Thomas P. Puccio, New York, NY, Gary A. Orseck, Esq., Lawrence S. Robbins, Esq., Damon W. Taaffe, Esq., Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP, Washington, DC, Will Aitchison, Esq., Mark A. Crabtree, Esq., Aitchison & Vick, Inc., Portland, OR, John T. Brennan, Esq., Law Offices of John T. Brennan, Brooklyn, NY, for Plaintiffs.

Lorie E. Almon, Esq., Gerald L. Maatman, Jr., Esq., Peter A. Walker, Esq., Robert S. Whitman, Esq., Seyfarth Shaw LLP, New York, NY, Georgia Pestana, Assistant Corporation Counsel, New York, NY, for Defendants.

*OPINION AND ORDER*

SHIRA A. SCHEINDLIN, District Judge:

## I. INTRODUCTION

Over fifteen thousand current and former New York City police officers and detectives ("plaintiffs") assert that the City of New York and the New York City Police Department ("NYPD") (collectively "defendants") systematically violate plaintiffs' overtime rights under the Fair Labor Standards Act ("FLSA").[1] This lawsuit addresses the policies and practices of the nation's largest police department, and plaintiffs claim hundreds of millions of dollars in damages based on defendants' failures concerning the accrual, use, and payment of overtime.

After more than five years of litigation, the parties have cross-moved for summary judgment. Defendants have moved for judgment on all claims, while plaintiffs have moved for judgment on all of their claims with the exception of two sub-categories within the second of their five claims. In addition, plaintiffs have moved to strike one of defendants' affirmative defenses as a matter of law. For the reasons that follow, plaintiffs' motion is granted in part and denied in part, and defendants' motion is granted in part and denied in part.

## II. BACKGROUND

### A. Claims

Plaintiffs filed their initial complaint on November 27, 2002, and an amended complaint on February 24, 2003. The amended complaint asserts five distinct claims. *First*, plaintiffs claim that defendants have a routine practice of denying requests to use accrued compensatory time off without complying with FLSA's requirements (the

---

1. 29 U.S.C. §§ 201–219.

"denial of use" claim).[2] *Second*, plaintiffs claim that several of defendants' policies unlawfully force plaintiffs to accept compensatory time rather than cash overtime (the "forced accrual" claim).[3] *Third*, plaintiffs claim that some regular work schedules contain overtime, for which they are not compensated (the "chart" claim).[4] *Fourth*, plaintiffs claim that defendants improperly exclude shift differentials and longevity pay when calculating FLSA overtime rates (the "regular rate" claim).[5] *Fifth*, plaintiffs claim that defendants impermissibly fail to compensate for overtime amounting to less than fifteen minutes (the "failure to pay" claim).[6]

## B. Procedural Posture

On June 23, 2004, this Court denied defendants' motion to dismiss the denial of use claim, as well as defendants' motion to join plaintiffs' unions as necessary parties.[7] On December 27, 2004, this Court denied defendants' motion to dismiss the chart claim, the regular rate claim, and the failure to pay claim.[8] Large-scale discovery then proceeded, including numerous depositions and document productions,[9] as well as a jointly-conducted survey of a random sample of plaintiffs.[10]

For ease of understanding I will outline each element of the parties' respective motions. Plaintiffs request summary judgment on the denial of use claim, on three separate grounds: (1) defendants' admitted failure to provide acceptable alternative dates when denying a compensatory time request violates the statutory requirement that requests be granted within a "reasonable time," (2) defendants' admitted refusal to call in officers to work overtime to cover for officers using compensatory time precludes the defendants from asserting that any denial is based on the need to prevent an "undue disruption" of police services, and (3) defendants' admitted delegation of discretion to front-line supervisors to grant or deny compensatory time precludes reliance on the "undue disruption" defense.[11] Plaintiffs also request partial summary judgment on the forced accrual claim, arguing that defendants' admitted policy of offering some optional overtime assignments only for compensatory time—without a cash overtime option—violates their Collective Bargaining Agreements ("CBAs"), which, in turn, would violate the FLSA.[12] Plaintiffs next

---

**2.** *See* Amended Complaint ("Am. Compl.") ¶¶ 9–13.

**3.** *See id.* ¶¶ 14–21.

**4.** *See id.* ¶¶ 22–31.

**5.** *See id.* ¶¶ 32–35.

**6.** *See id.* ¶¶ 36–38.

**7.** *See Scott v. City of New York* ("*Scott I*"), 340 F.Supp.2d 371 (S.D.N.Y.2004).

**8.** *See Scott v. City of New York* ("*Scott II*"), No. 02 Civ. 9530, 2004 WL 2980135 (S.D.N.Y. Dec. 27, 2004).

**9.** *See, e.g.,* 3/26/07 Deposition of Raymond Diaz, Assistant Chief of Police, Manhattan North Command, NYPD ("Diaz Dep."), Ex. 4 to 5/9/08 Declaration of Damon W. Taaffe, plaintiffs' attorney, in Support of Plaintiffs' Motion for Partial Summary Judgment ("First Taaffe Decl.").

**10.** *See* Defendants' Local Civil Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1") ¶ 10. *See also* 5/9/08 Declaration of Eugene Ericksen, Defendants' Survey Expert, in Support of Defendants' Motion for Summary Judgment ("Ericksen Decl.") ¶¶ 2–3 (describing design and administration of the survey).

**11.** *See* Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment ("Pl. Mem.") at 2–9.

**12.** *See id.* at 16–17.

request summary judgment on the chart claim, based on defendants admitted failure to provide overtime compensation when regular duty charts exceed FLSA's hour caps in a single work period.[13] Plaintiffs then request summary judgment on the regular rate claim, due to defendants' admitted failure to include shift differentials and changes in longevity pay when calculating the rate upon which cash overtime payments are based.[14] Plaintiffs also request summary judgment on the failure to pay claim, based on defendants' admitted failure to compensate for overtime amounting to less than fifteen minutes in a single shift.[15] Finally, plaintiffs move to strike defendants' meal period defense—an affirmative defense that recognition of plaintiffs' meal periods as non-working time changes the FLSA calculus sufficiently to counterbalance the chart, regular rate, and failure to pay claims—based on the claim that officers' meal periods are in fact working time.[16]

Defendants seek summary judgment on plaintiffs' denial of use claim, arguing that established NYPD policies and practices require denying requests for compensatory time when granting the request would cause an undue disruption or—in the alternative—that plaintiffs' have failed to exhaust grievance procedures outlined in the CBAs.[17] Next defendants request summary judgment on the forced accrual claim, based on the legal claim that voluntary overtime offered only for compensatory time does not violate FLSA and the factual claims that the NYPD does not have a cap on cash overtime nor a restriction on cash overtime in the year prior to an officer's retirement.[18] Defendants then request summary judgment on all of plaintiffs' remaining claims, asserting that any minor deficiency in the calculation of overtime hours and overtime payments is offset either by prior inclusion of meal periods in payroll calculations—which defendants claim are in fact non-working hours under FLSA [19]—or by overtime payments awarded under the CBAs but not required by FLSA.[20] Finally, defendants claim that even if they are not entitled to credit sufficient to offset such minor deficiencies, their admitted failure to compensate for overtime of less than fifteen minutes is excused as de minimis.[21]

## C. Uncontested Facts[22]

Plaintiffs include more than fifteen thousand New York City police officers and detectives.[23] Defendants are the City of New York and the NYPD, public employers of tens of thousands of employees.[24] The terms and conditions of plaintiffs' employment by defendants are set forth in the CBAs reached by their unions.[25]

---

13. *See id.* at 17–19.

14. *See id.* at 19–24.

15. *See id.* at 24–27.

16. *See id.* at 28–34.

17. *See* Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def. Mem.") at 4–16.

18. *See id.* at 16–20.

19. *See id.* at 20–27.

20. *See id.* at 28–30.

21. *See id.* at 27–28.

22. A great number of facts in this case remain hotly contested. Facts recited here are only those that meet the standard required for summary judgment.

23. *See* Plaintiffs' Statement of Material Facts Not in Dispute ("Pl. 56.1") ¶ 1; Def. 56.1 ¶ 5.

24. *See* Def. 56.1 ¶¶ 1–3.

25. *See id.* ¶ 6–7. *See also* 12/18/95 Patrolmen's Benevolent Association ("PBA") 1995–2000 Agreement ("PBA 1995 CBA"), Ex. A to 8/27/08 Declaration of John E. Kanganis,

Work schedules under the CBAs are set forth in twenty-eight day "charts," which consist of a recurring schedule of work shifts ("tours") and scheduled days off.[26] This four-week calendar conforms to the twenty-eight day FLSA work period that the NYPD has elected to utilize to determine FLSA overtime.[27] When NYPD officers are compensated for overtime, they are either credited one and one-half hours of compensatory time off for each hour of overtime worked, or they are paid at one and one-half times the NYPD's calculation of the officer's regular rate of pay.[28]

### 1. Grievance Procedures

The CBAs contain a mandatory seven-step grievance procedure, terminating in binding arbitration.[29] Five discrete categories of complaints are subject to this contractual mechanism: (1) violations and misinterpretations of the CBA, (2) violation of NYPD regulations concerning employment, (3) violations of NYPD regulations concerning interrogation of officers, (4) violations concerning internal promotion mechanisms, and (5) assignment to duties differing from an officer's job specification.[30] Plaintiffs do not dispute defendants' assertion that contractual grievance procedures were not exhausted.[31]

### 2. Calculation of Time Worked

When reported, plaintiffs' time worked—to the minute—is logged into defendants' payroll system.[32] This time includes meal breaks, for which officers receive full compensation at either the regular or overtime rate.[33] Under NYPD regulations, officers receive a meal period of one hour per tour,[34] although they remain "on duty" during that time.[35] Longstanding NYPD practice includes meal periods in the tabulation of hours worked, for both contractual and FLSA overtime purposes.[36] During meal breaks, officers are required to remain

Lieutenant, NYPD ("Kanganis Decl."); 9/4/02 Award of Public Arbitration Panel ("PBA 2002 Arbitration"), Ex. B to Kanganis Decl.; 7/24/06 PBA 2002–2004 Agreement ("PBA 2002 CBA"), Ex. C to Kanganis Decl.; 5/19/08 Public Arbitration Panel Award ("PBA 2008 Arbitration"), Ex. D to Kanganis Decl.; 8/21/08 Memorandum of Understanding Between the City of New York and the PBA ("2008 PBA MOU"), Ex. E to Kanganis Decl.; 9/14/98 Detectives' Endowment Association ("DEA") 1996–2001 Agreement ("DEA 1996 CBA"), Ex. F. to Kanganis Decl.; 12/30/03 DEA 2001–2004 Agreement ("DEA 2001 CBA"), Ex. G to Kanganis Decl.; 5/7/07 DEA 2004–2008 Agreement ("DEA 2004 CBA"), Ex. H to Kanganis Decl.; Undated DEA 2008–2012 Agreement ("DEA 2008 CBA"); Ex. I to Kanganis Decl. The relevant terms of these contracts are substantively identical. *See* First Taaffe Decl. ¶¶ 2–3.

26. *See* Def. 56.19.

27. *See id.* ¶ 4. Law enforcement and fire protection employers may use work periods of up to twenty-eight days to determine FLSA compliance. *See infra* Section IV.C.

28. *See, e.g.,* PBA 1995 CBA art. III, § 1(a).

29. *See* Pl. 56.1 ¶ 44. *See also, e.g.,* PBA 1995 CBA art. XXII (outlining procedures).

30. *See, e.g.,* PBA 1995 CBA art. XXII, § 1(a).

31. *See* Pl. Mem. at 17–18. *See also* Plaintiffs' Response to Defendants' Rule 56.1 Statement ("Pl. Opp. 56.1") ¶ 44 (denying that resort to contractual grievance procedures is required concerning FLSA disputes).

32. *See* Def. 56.1 ¶ 47.

33. *See* Pl. 56.1 ¶ 31; Def. 56.1 ¶ 56.

34. *See* Pl. 56.1 ¶ 56.

35. *See id.* ¶ 38.

36. *See id.* ¶ 31. *See also id.* ¶ 32 (noting that when an officer takes a tour off using compensatory time, his or her time bank is docked for time including the meal period); 7/18/86 Interim Order No. 26–1, Ex. 8 to First Taaffe Decl.(describing time entered for FLSA purposes as time spent "actually working").

within their command area, maintain radio contact, respond to emergencies, and generally "remain alert."[37] However, they are removed from the dispatch queue—directing most radio traffic to other officers—and some are permitted to engage in personal business.[38] Sometimes officers are forced to miss their meal period entirely due to duties that arise.[39] Nevertheless, most officers reported in the joint survey that active interruption of meal periods is infrequent.[40]

Plaintiffs are compensated for contract overtime only when their total overtime exceeds fifteen minutes in a single tour.[41] Although defendants currently record overtime increments of less than fifteen minutes for "tracking purposes,"[42] it is disputed whether officers are routinely permitted to enter overtime of less than fifteen minutes towards the FLSA threshold.[43] Moreover, one combination of tours within a single chart results in more than the 171–hour overtime threshold in a single work period, but no overtime payments are made based solely on completion of an assigned chart.[44]

### 3. Compensatory Time Policies

The CBAs permit the use of compensatory time as an alternative method of compensating officers for overtime.[45] By the express terms of the CBAs, the choice between cash and compensatory time is "at the sole option of the employee."[46] Some voluntary overtime assignments are offered on the precondition that the officer agree to receive compensatory time rather than cash.[47] Formal policies require officers wishing to use accrued compensatory time to submit a written request to a supervisor,[48] although some officers make such requests informally.[49] Most formal requests are granted,[50] but many officers

---

**37.** Def. 56.1 ¶ 63.

**38.** *See id.* ¶¶ 60–62.

**39.** *See* Pl. 56.1 ¶ 35.

**40.** *See* Def. 56.1 ¶ 64–65.

**41.** *See* Pl. 56.1 ¶ 21. *See also* Diaz Dep. at 15–16. The parties have not offered evidence as to whether this consistent rounding down of the first fifteen minutes of overtime occurs per tour or per work period.

**42.** *See* Defendants' Counterstatement Pursuant to Local Civil Rule 56.1 ("Def. Opp. 56.1") ¶ 21.

**43.** *Compare* Diaz Dep. at 15("There is another rule that says that he has to work minimum 15 minutes overtime before he can put in for overtime."), *with* 2/28/08 Deposition of John Kanganis, Lieutenant, Assistant to the Deputy Commissioner for Labor Relations, NYPD ("Second Kanganis Dep."), Ex. C to 6/9/08 Declaration of Robert S. Whitman, defendants' attorney, in Opposition to Plaintiffs' Motion for Summary Judgment ("Whitman Decl."), at 65–74 (explaining procedures for officers to enter overtime of less than fifteen

minutes in hopes of reaching the FLSA threshold).

**44.** *See* Pl. 56.1 ¶¶ 11–13. *See also* 2/25/08 Defendants' Responses and Objections to Plaintiffs' Second Set of Requests for Admission, Ex. G to Whitman Deck, at 6–7 (admitting use of the "5–2 5–3 chart"); Undated Expert Witness Report of Murray Simpson, Plaintiffs' Expert ("Simpson Report"), Ex. 14 to First Taaffe Decl., at 29–30(demonstrating that use of the "5–2 5–3 chart" creates some twenty-eight day work periods of 171 hours, forty minutes).

**45.** *See* Def. 56.1 ¶ 27

**46.** Pl. 56.1 ¶ 10 (quoting PBA 2002 CBA art. III, § 1(a)).

**47.** *See id.* ¶ 9; Def. 56.1 ¶ 52.

**48.** *See* Def. 56.1 ¶ 28.

**49.** *See* Declaration of Thomas M. Guterbock, Plaintiffs' Survey Expert, in Support of Plaintiffs' Motion for Partial Summary Judgment ("Guterbock Decl.") ¶ 6.

**50.** *See* Def. 56.1 ¶¶ 30–36.

do not bother to make requests in circumstances where they believe their request will be denied.[51] When formal requests are denied, the NYPD does not require that supervisors offer the requesting officer an alternative date on which he or she might use compensatory time.[52]

The NYPD's stated policy is to grant all requests to use compensatory time unless granting such requests would be unduly disruptive to operations.[53] The decision whether to grant or deny a request is primarily left to the discretion of the front-line supervisor.[54] In certain cases—primarily holidays—the NYPD declares citywide or regional "no excusal" days on which all compensatory time requests are denied.[55] Moreover, the NYPD has no policy of calling in officers on an overtime basis to stand in for officers who wish to take compensatory time off.[56]

#### 4. Cash Overtime Policies

NYPD officers are paid based on a basic annual salary and a set of supplemental premiums. Officers are paid a "night shift differential" of ten percent for hours worked between 4 p.m. and 8 a.m., a "longevity premium" upon completion of five, ten, fifteen, and twenty years of service, and "assignment pay" for particular tasks.[57] In order to determine the rate payment for cash overtime, the NYPD calculates a "regular rate" based on the officer's annual salary file. This method divides the officer's current annual salary

plus recurring premiums by the number of non-overtime hours that an officer is anticipated to work during a year.[58] However, compensation for overtime performed during the night shift differential period includes the night shift differential on top of the officer's NYPD regular rate.[59] Thus the NYPD regular rate is not calculated based on the work performed in each FLSA work period.[60]

The NYPD monitors the amount of cash overtime worked by individual officers and generates reports of individual officers who earn more than thirty-five hours of overtime in a single month.[61] Moreover, the NYPD monitors the amount of overtime earned by officers in their final years of service, with an eye towards preventing officers from increasing the salary figures from which their pension will be derived.[62]

### III. LEGAL STANDARD

#### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." [63] An issue of fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving par-

---

51. *See* Guterbock Decl. ¶ 8.

52. *See* Pl. 56.1 ¶ 2.

53. *See* Def. 56.1 ¶¶ 38–39.

54. *See* Pl. 56.1 ¶ 5; Def. 56.1 ¶ 40.

55. Def. 56.1 ¶¶ 42–43.

56. *See* Pl. 56.1 ¶ 3; Def. 56.1 ¶ 45.

57. Pl. 56.1 ¶¶ 14–16.

58. *See id.* ¶ 20.

59. *See id.* ¶ 17. *See also, e.g.,* PBA 1995 CBA art. XX, § b.

60. *See* Pl. 56.1 ¶ 19.

61. *See* Def. 56.1 ¶¶ 50–51.

62. *See id.* ¶ 55.

63. Fed.R.Civ.P. 56(c).

ty.' " [64] A fact is material when it " 'might affect the outcome of the suit under the governing law.' " [65] "It is the movant's burden to show that no genuine factual dispute exists." [66]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. "Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " [67] To do so, the non-moving party must do more than show that there is " 'some metaphysical doubt as to the material facts,' " [68] and it " 'may not rely on conclusory allegations or unsubstantiated speculation.' " [69] However, " 'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.' " [70]

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.[71] However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.' " [72] Summary judgment is therefore "only appropriate when there is no genuine issue as to any material fact, making judgment appropriate as a matter of law." [73]

## B. Statutory Interpretation

 Statutory interpretation "necessarily begins with the 'plain meaning' of a law's text and, absent ambiguity, will gen-

---

**64.** *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir.2006) (quoting *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir.1998)).

**65.** *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir.2007) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir.2005)).

**66.** *Vermont Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

**67.** *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir.2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). *Accord In re September 11 Litig.*, 500 F.Supp.2d 356, 361 (S.D.N.Y.2007) ("Where the nonmoving party bears the burden of proof at trial, the burden on the moving party may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.") (quotation omitted).

**68.** *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir.2006) (quoting *Matsushita Elec. Indus. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

**69.** *Jeffreys*, 426 F.3d at 554 (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir.2001)).

**70.** *McClellan*, 439 F.3d at 144 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

**71.** *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 456 (2d Cir.2007) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).

**72.** *McClellan*, 439 F.3d at 144 (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir.1997)). *Accord Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**73.** *Karpova v. Snow*, 497 F.3d 262, 270 (2d Cir.2007) (citing *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 486–87 (2d Cir.2006)).

erally end there." [74] Such analysis looks both "to the particular statutory language at issue" and to "the language and design of the statute as a whole." [75] If and only if the text is ambiguous, "the court may resort to legislative history to determine the statute's meaning." [76] However, when opening the door to legislative history, the court must be cautious to "construct an interpretation that comports with [the statute's] primary purpose and does not lead to anomalous or unreasonable results." [77] The hierarchy of legislative history values committee reports over floor statements and floor statements by key legislative drafters and sponsors over floor statements of other members of Congress. [78]

## C. Administrative Deference

The U.S. Department of Labor ("DoL") has issued voluminous regulations to facilitate proper compliance with the overtime provisions of FLSA. [79] Regardless of whether these rules are labeled as "regulations" or "interpretations," they are entitled to *Chevron* deference. [80] Under this standard, courts follow a two-step procedure to review an agency interpretation of a federal statute. [81] A court must first determine whether the "intent of Congress is clear" and the meaning of the statute is unambiguous. If congressional intent as to the disputed issue is clear, then a contrary administrative construction must be rejected. [82] However, if a court finds that the statute is "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." [83]

However, not all DoL pronouncements are given such weight. "Interpretations such as those in opinion letters ... policy statements, agency manuals, and enforcement guidelines[—] all of which lack the force of law—do not warrant *Chevron*-style deference." [84] Rather such interpretations are " 'entitled to respect' " only to the extent that they have the " 'power to persuade.' " [85] The full measure of deference is accorded to such informal materials

**74.** *Collazos v. United States*, 368 F.3d 190, 196 (2d Cir.2004).

**75.** *K Mart Corp. v. Cartier*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988).

**76.** *Puello v. Bureau of Citizenship and Immigration Servs.*, 511 F.3d 324 (2d Cir.2007).

**77.** *Connecticut ex rel. Blumenthal v. U.S. Dep't of the Interior*, 228 F.3d 82, 89 (2d Cir.2000).

**78.** *See Garcia v. United States*, 469 U.S. 70, 76, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) ("In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill."); *United States v. Indelicato*, 865 F.2d 1370, 1382 (2d Cir.1989) (deferring to the floor statement of a legislative sponsor).

**79.** *See* 29 C.F.R. §§ 553.1–.233, 778.0–.603, 785.1–.50.

**80.** *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007). *See also* Fair Labor Standards Amendments of 1985, Pub. L. No. 99–150, § 6, 99 Stat. 787, 790 (codified at 29 U.S.C. § 203 note) (directing the Secretary of Labor to promulgate regulations concerning compensatory time).

**81.** *See Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

**82.** *See id.* at 842–43, 104 S.Ct. 2778.

**83.** *Id.* at 843, 104 S.Ct. 2778.

**84.** *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000).

**85.** *Id.* (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)).

only when they clarify an ambiguity in the agency's own regulations.[86] The preamble to formal regulations is an example of materials to which strong deference is due when construing regulations but not when construing the governing statute.[87]

## IV. APPLICABLE LAW

### A. The Fair Labor Standards Act and Public Employees

■ Congress enacted the FLSA in order to ensure " 'a fair day's pay for a fair day's work.' "[88] Amendments to the Act in 1966 and 1974 extended its coverage to most public employers, although implementation at the local level was delayed until 1985, when the Supreme Court held in *Garcia v. San Antonio Metropolitan Transit Authority*[89] that Congress had the authority to regulate employment by states and municipalities.[90] In the aftermath of *Garcia,* Congress passed the Fair Labor Standards Amendments of 1985, which reduced the costs of the mandatory overtime differential by allowing states and municipalities to provide alternative compensation in the form of compensatory time.[91] Recognizing that "unlike private employers, public employers cannot pass the operating costs associated with overtime pay to consumers,"[92] Congress implemented a regime designed to balance workers' rights to time-and-a-half compensation for overtime work against states and municipalities needs for operational flexibility and protection of the public fisc.[93]

### B. Exhaustion of Grievance Procedures

■ FLSA provides a private cause of action for employees to recover unpaid overtime compensation in either federal or state court.[94] "No exhaustion requirement or other procedural barriers are set up, and no other forum for enforcement of statutory rights is referred to or created by the statute."[95] The Supreme Court had long held that the right to a judicial forum, like all FLSA rights, "cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."[96] Although the Court's more recent decision in *Wright v. Universal Maritime Service Corp.* hinted that such absolute prohibi-

---

**86.** See *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). *See also Christensen,* 529 U.S. at 588, 120 S.Ct. 1655 (describing a unique category of *"Auer* deference").

**87.** See *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 158 n. 13, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).

**88.** *Chao v. Gotham Registry, Inc.,* 514 F.3d 280, 283 (2d Cir.2008) (quoting 81 Cong. Rec. 4983 (1937) (message of President Roosevelt)).

**89.** 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985)

**90.** See *Moreau v. Klevenhagen,* 508 U.S. 22, 25–26, 113 S.Ct. 1905, 123 L.Ed.2d 584 (1993) (citations omitted).

**91.** See 29 U.S.C. § 207(*o* ). *See also Christensen,* 529 U.S. at 578–79, 120 S.Ct. 1655 (laying out the legislative history).

**92.** *Collins v. Lobdell,* 188 F.3d 1124, 1129 (9th Cir.1999).

**93.** See S.Rep. No. 99–150, at 11 (1985). *See also Christensen,* 529 U.S. at 585, 120 S.Ct. 1655.

**94.** See 29 U.S.C. § 216(b).

**95.** *Barrentine v. Arkansas–Best Freight Sys.,* 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981).

**96.** *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)).

tions on waiver may no longer be valid, at a minimum "the right to a federal judicial forum is of sufficient importance to be protected against less-than explicit union waiver in a CBA." [97] Moreover even where FLSA permits certain statutory requirements to be resolved in a CBA,[98] claims based on violations of FLSA itself—and not on construction of the CBA—are not subject to exhaustion requirements absent clear and unmistakable waiver.[99] Therefore, most FLSA claims do not require exhaustion of grievance procedures outlined in a CBA prior to suit in federal court.[100]

## C. Calculation of Time Worked

 FLSA generally requires that employers provide overtime compensation for any work beyond forty hours in a single workweek.[101] However, FLSA provides an exception for public law enforcement employees, allowing overtime to commence after 171 hours of work in a twenty-eight day work period or "tour of duty." [102] "Work" under FLSA is

> exertion or loss of an employee's time that is (1) controlled or required by an employer, (2) pursued necessarily and primarily for the employer's benefit, and (3) if performed outside the scheduled work time, an integral and indispensable part of the employee's principal activities.[103]

Whether or not employee activities constitute work is a "necessarily fact-bound" inquiry.[104] Moreover any payment received for time "not worked" is excluded entirely from the FLSA calculus.[105]

### 1. Meal Breaks

"Bona fide meal periods are not worktime." [106] In *Reich v. Southern New England Telecommunications Corp.* ("*SNET*"), the Second Circuit adopted a flexible "predominant benefit" standard that allows an employer to impose minimal restrictions on employees' meal breaks without rendering breaks compensable work time.[107] Using that standard, *SNET*

**97.** 525 U.S. 70, 80, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998). *See also id.* (requiring that such a waiver be "clear and unmistakable"); *O'Brien v. Town of Agawam,* 350 F.3d 279, 284–86 (1st Cir.2003) (applying the Supreme Court's most recent pronouncements and rejecting an arbitral exhaustion requirement).

**98.** *See, e.g.,* 29 U.S.C. § 207(*o*)(2)(A).

**99.** *See Collins,* 188 F.3d at 1127; *cf. Barrentine,* 450 U.S. at 741 n. 19, 101 S.Ct. 1437 (assuming without deciding that courts need only defer to prior arbitral decisions construing the provisions of a CBA that are incorporated into the statutory scheme and not interpretations of the statutory provisions themselves).

**100.** *See Tran v. Tran,* 54 F.3d 115, 118 (2d Cir.1995). *See also O'Brien,* 350 F.3d at 284–86; *Albertson's Inc. v. United Food & Commercial Workers Union,* 157 F.3d 758, 761–62 (9th Cir.1998) (collecting cases).

**101.** *See* 29 U.S.C. § 207(a)(1).

**102.** *See id.* § 207(k)(1)(B); 29 C.F.R. § 553.201.

**103.** *Chao,* 514 F.3d at 285 (citing *Holzapfel v. Town of Newburgh,* 145 F.3d 516, 521 (2d Cir.1998)).

**104.** *Reich v. Southern N.E. Telecomm. Corp.* ("*SNEF*"), 121 F.3d 58, 64 (2d Cir.1997). Accord *Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944) ("Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case.").

**105.** *See* 29 U.S.C. § 207(e)(2).

**106.** 29 C.F.R. § 785.19.

**107.** 121 F.3d at 65. DoL interpretive regulations—recently given binding effect by the Supreme Court's decision in *Long Island Care*

affirmed a decision after a bench trial holding that a requirement that employees remain at a work site during a meal period—specifically in order to provide security and ensure site safety—transformed a bona fide break into compensable work.[108]

A DoL interpretive letter specifically applies this "work" standard to the lunch periods of law enforcement personnel:

> [W]e would not consider the fact that [law enforcement employees remain in uniform [during meals] as meaning that they are on duty while eating a meal. Moreover, we would not consider infrequent interruptions of short duration which may occur when a citizen compliments, or asks the law enforcement employee a simple question, as nullifying the exclusion of an otherwise bona fide meal period from compensable hours of work.[109]

On the other hand, DoL regulations state that "where law enforcement personnel are required to remain on call in barracks or similar quarters, or are engaged in extended surveillance activities ..., they are not considered to be completely relieved from duty, and any such meal periods would be compensable." [110] *SNET* also cited with approval numerous cases in which law enforcement officers' lunch breaks were held not to be compensable, since officers were allowed to tend to personal matters, despite restrictions mandating that officers remain in uniform and "respond to calls for assistance or inquiries from the public." [111]

 Parties may reach a reasonable agreement to include "preliminary and postliminary activities and time spent in eating meals between working" as working hours.[112] Determination of whether such an agreement exists "involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, ... and all of the surrounding circumstances." [113] In a case where an employer has long paid employees for bona fide meal periods and included meal periods in FLSA calculations, a court may find that a prior agreement

---

*at Home*—appear to require a more stringent standard barring any active or inactive duties during unpaid meal breaks, rather than the more flexible predominant benefit test. *See* 29 C.F.R. § 785.19. Despite *SNET*'s description of the regulations as "not controlling on courts" and mere "persuasive authority," 121 F.3d at 65, *Long Island Care at Home* does not in fact require a different result. A 1985 DoL interpretive letter provides a flexible reading of the agency regulation, *see* Letter from Susan R. Meisinger, Deputy Undersecretary, U.S. Dep't of Labor, to Chief Administrative Analyst, Los Angeles Police Department, 1985 DOLWH LEXIS 1 (July 29, 1985) ("Meisinger Letter"), and this letter must be given *Auer* deference when a court finds ambiguity in the governing regulation. *See Christensen*, 529 U.S. at 588, 120 S.Ct. 1655. Moreover, the Second Circuit has continued to use the *SNET* standard after *Long Island Care at Home* was decided. *See Singh v. City of New York*, 524 F.3d 361, 368 (2d Cir.2008).

108. *See SNET*, 121 F.3d at 62–63, 69.

109. Meisinger Letter, 1985 DOLWH LEXIS 1, at *3–*4.

110. 29 C.F.R. § 553.223.

111. *SNET*, 121 F.3d at 66 (citing *Avery v. City of Talladega*, 24 F.3d 1337, 1347 (11th Cir. 1994), *Henson v. Pulaski County Sheriff Dep't*, 6 F.3d 531 (8th Cir.1993), and *Armitage v. City of Emporia*, 982 F.2d 430 (10th Cir. 1992)). *Accord Singh*, 524 F.3d at 368.

112. 29 C.F.R. § 778.320.

113. *Skidmore*, 323 U.S. at 137, 65 S.Ct. 161. *See also* 29 C.F.R. § 778.320 (noting that the determination of whether an agreement exists must be based on "all the pertinent facts that the parties have agreed to treat such time as hours worked").

exists, regardless of whether the agreement is expressly incorporated into the CBA.[114] Moreover, such an agreement is reasonable so long as substantive duties are performed for the employers' benefit.[115]

## 2. Recorded Increments

 FLSA requires employers to compensate employees for all time worked,[116] and "[a]n employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him." [117] The exception to this rule is the de minimis doctrine, which excludes "only a few seconds or minutes of work beyond the scheduled working hours." [118] The Second Circuit utilizes a multi-factor test to assess de minimis claims:

> [T]hree factors should be examined to assess whether otherwise compensable

time should be considered de minimis, and therefore not compensable: (1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether "the claimants performed the work on a regular basis." [119]

The factors are analyzed in concert and are balanced; they are not independent preconditions to a de minimis finding.[120]

## D. Compensatory Time Off

 As described above, the FLSA Amendments of 1985 instituted a system by which states and municipalities could provide employees with compensatory time off in the place of cash overtime.[121] This system maintained FLSA's governing policy of compensating workers for overtime at time and a half in order to deter overwork, but it allowed compensation in a form that would not overburden local coffers.[122] Thus any construction of the com-

---

**114.** *See, e.g., United States Cartridge Co. v. Powell*, 185 F.2d 67, 69 (8th Cir.1950) (counting lunch periods as hours worked based on the employer's representations to employees, despite the absence of an express agreement); *O'Brien v. Town of Agawam*, 440 F.Supp.2d 3, 13 (D.Mass.2006) (including lunch periods as hours worked based on description in a CBA of a complete shift as "hours of work"); *cf. Barefield v. Village of Winnetka*, 81 F.3d 704, 711 (7th Cir.1996) (excluding a paid lunch period from hours worked only when the employer's Policy and Procedure Manual expressly stated that the first thirty minutes beyond a regular shift would not be counted as overtime, implying an agreement that meal periods were not to be counted as working time). *But see Barry v. Town of Elma*, No. 02–CV–344, 2005 WL 711842, at *2 (W.D.N.Y. Mar. 28, 2005) (requiring "an explicit agreement").

**115.** *See Chavez v. City of Albuquerque*, 13 Wage & Hour Cas.2d (BNA) 419, 436–37 (D.N.M.2008) (acknowledging that agreements concerning meal periods must be respected but finding an agreement counting

vacation time as hours worked to be unreasonable).

**116.** *See Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602, 64 S.Ct. 698, 88 L.Ed. 949 (1944).

**117.** 29 C.F.R. § 785.47.

**118.** *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

**119.** *Reich v. New York City Transit Auth.*, 45 F.3d 646, 652 (2d Cir.1995) (quoting *Lindow v. United States*, 738 F.2d 1057, 1062–63 (9th Cir.1984)). *Accord Singh*, 524 F.3d at 370–72 (applying this test).

**120.** *See Singh*, 524 F.3d at 371–72; *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 594 n. 7 (2d Cir.2007).

**121.** *See* 29 U.S.C. § 207(*o*).

**122.** *See id.* § 207(*o*)(1) (providing compensatory time "at a rate not less than one and one-

pensatory time provisions must balance "concern for ensuring that the employee receive[s] some timely benefit for overtime work" against a congressional intent "to mitigate the effects of applying the FLSA." [123]

### 1. Choice of Compensatory Time or Cash Payment

Compensatory time may only be provided in place of cash overtime pursuant to a CBA, a memorandum of understanding or other agreement with a collective bargaining agent, or an individual agreement or understanding with an employee not part of a collective bargaining unit.[124] "Employers and employees are required to negotiate and reach agreements over the use and preservation of comp time," [125] and the resulting agreement "may provide for any combination of compensatory time off and overtime payment in cash." [126] So long as the agreement does not violate FLSA, it may govern any aspect of the compensatory time arrangement.[127] Moreover, informal agreements will only be recognized "in the absence of a collective bargaining agreement applicable to the employees." [128]

### 2. Use of Compensatory Time

■ An employee's election to use accrued compensatory time is governed by section 207(*o* )(5) of Title 29 of the United States Code, which states:

An employee of a public agency which is a State, political subdivision of a State, or an interstate governmental agency who has accrued compensatory time off authorized to be provided ..., and who has requested the use of such compensatory time, shall be permitted by the employee's employer to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency.

The "reasonable period" requirement "refers to the time period between the date for which the employee applies for leave and the date on which that leave is actually granted." [129] Given both this reasonableness standard and the undue disruption exception to an otherwise unreasonable delay, employers are not obligated to grant compensatory time on the precise day an employee requests it.[130]

■ "Whether a request to use compensatory time has been granted within a 'reasonable period' will be determined by considering the customary work practices within the agency based on the facts and circumstances in each case." [131] This flexible standard does not impose a per se requirement that employers include alternative dates on which compensatory time might be taken when denying a compensa-

half hours for each hour of employment for which overtime compensation is required").

**123.** *Christensen,* 529 U.S. at 579, 584, 120 S.Ct. 1655.

**124.** *See* 29 U.S.C. § 207(*o* )(2)(A). *See also Moreau,* 508 U.S. at 26–27, 113 S.Ct. 1905 (outlining the structure and purpose of the provision).

**125.** *Collins,* 188 F.3d at 1130.

**126.** 29 C.F.R. § 553.23(a)(2).

**127.** *See id.* § 553.23(a)(2), (b)(1).

**128.** *Id.* § 553.23(b)(1).

**129.** *Scott I,* 340 F.Supp.2d at 380. *Accord Parker v. City of N.Y.,* No. 04 Civ. 4476, 2008 WL 2066443, at *7 (S.D.N.Y. May 13, 2008) (same).

**130.** *See, e.g., Mortensen v. County of Sacramento,* 368 F.3d 1082, 1084 (9th Cir.2004); *Houston Police Officers' Union v. City of Houston,* 330 F.3d 298, 304 (5th Cir.2003); *Parker,* 2008 WL 2066443, at *7.

**131.** 29 C.F.R. § 553.25(c)(1).

tory time request.[132] Although providing alternative dates might constitute a laudable practice and facilitate FLSA compliance, it is not required by statute. Rather, so long as requests are not routinely denied, an employer may require an employee to file a new request asking for different days off.

■■■ The undue disruption provision serves as a safety valve within the compensatory time mechanism, protecting public agencies' operational capacity from being harmed by the absence of vital employees. DoL regulations clarify this standard by stating: "Mere inconvenience to the employer is an insufficient basis for denial of a request for compensatory time off."[133] Moreover, "a financial burden ... does not on its own[ ] rise to the level of an undue disruption," as this would undermine the FLSA policy of creating a financial disincentive to overwork individual employees.[134]

■■■ FLSA does not mandate—as a matter of law—that allowing one employee to work overtime in order to fill the place of another employee using compensatory time cannot constitute an undue disruption.[135] The statutory standard combined with the DoL regulations provides an unambiguous test: an undue disruption must be more than a "mere inconvenience" and must "impose an unreasonable burden on the agency's ability to provide services of acceptable quality and quantity for the public."[136] Any remaining question is a factual one.[137]

■■■ Finally, the presence or absence of discretion in the hands of front line officers to deny the use of compensatory time does not bar use of the undue disruption provision as a matter of law.[138] On the other hand, discretion cannot be used as a mask to hide blanket policies of denying the use of compensatory time beyond the "reasonable period" absent undue disruption or the use of denials beyond the

---

**132.** *See Parker*, 2008 WL 2066443, at *7; *Heitmann v. City of Chicago* ("*Heitmann II*"), Nos. 04 C 3304, 04 C 5712, 2008 WL 506111, at *5 (N.D.Ill. Feb. 21, 2008) ("[T]he CPD has no obligation to provide an alternative date on which the sworn member could take FLSA compensatory time; instead the sworn member must make a new request.").

**133.** 29 C.F.R. § 553.25(d).

**134.** *Parker*, 2008 WL 2066443, at *7. *Accord Beck v. City of Cleveland*, 390 F.3d 912, 921 (6th Cir.2004); *Heitmann v. City of Chicago* ("*Heitmann I*"), Nos. 04 C 3304, 04 C 5712, 2007 WL 2739559, at *18 (N.D.Ill. Sept. 11, 2007); *DeBraska v. City of Milwaukee*, 131 F.Supp.2d 1032, 1037 (E.D.Wis.2000). *But see Mortensen*, 368 F.3d at 1090(holding that a construction of FLSA's compensatory time provisions that would increase public employer's costs runs contrary to the legislative purpose of the 1985 amendments).

**135.** *See Mortensen*, 368 F.3d at 1090; *Parker*, 2008 WL 2066443, at *9.

**136.** 29 C.F.R. § 553.25(d).

**137.** *See Parker*, 2008 WL 2066443, at *9. DoL interpretive materials state: "The fact that overtime may be required of one employee to permit another employee to use compensatory time off would not be a sufficient reason for an employer to claim that the compensatory time off request is unduly disruptive." Wage & Hour Admin. Ltr., 1994 WL 1004861 (Aug. 19, 1994). *Accord* Application of the Fair Labor Standards Act to Employees of State and Local Governments, 52 Fed. Reg. 2012, 2017 (1987) (regulatory preamble). However, this interpretation of the governing regulation is clearly erroneous, as it drastically oversimplifies a difficult factual issue. Thus deference is not required. *See Auer*, 519 U.S. at 461, 117 S.Ct. 905.

**138.** *See Houston Police Officers' Union*, 330 F.3d at 305–06 (holding that front-line discretion is not required as a matter of law); *Parker*, 2008 WL 2066443, at *9 (allowing front-line discretion "[a]s a matter of law ... does not violate the FLSA").

"reasonable period" as a punitive measure against individual officers.[139]

### E. Cash Overtime Rates

When public employers provide cash compensation for overtime, they are ruled by the same law that governs private employers.[140] Under FLSA, cash overtime must amount to "a rate not less than one and one-half times the regular rate at which [the worker] is employed."[141] The "regular rate" "shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee," less eight enumerated exemptions.[142] Two such exemptions are relevant in this case: payment for bona fide meal breaks not counted as hours worked[143] and overtime payments required by contract but not by FLSA—provided that such compensation "is not less than one and one-half times the rate established in good faith by the contract."[144]

 Thus in most cases "[t]he regular rate by its very nature must reflect all payments which the parties have agreed

shall be received regularly during the work [period], exclusive of overtime payments."[145] "[A] mere higher rate paid as a job differential or as a shift differential ... is not an overtime premium."[146] A narrow exception to that rule allows employers who compensate employees at different rates for entirely different kinds of work to base overtime payments on the applicable job rate, but only pursuant to an agreement arrived at before the work is performed.[147] Performance of the same duties at different times of day does not constitute "two or more kinds of work."[148] Similarly, the regular rate must include longevity pay insofar as it is nondiscretionary.[149] Even retroactive pay increases must be included in calculations of the regular rate, requiring recalculation and further disbursement of overtime pay long after the completion of the work period.[150]

The regular rate of pay must be recalculated each work period[151] In a given work period, when an employee works at two or more rates of non-overtime pay, the "regu-

139. *See* 29 C.F.R. § 553.25(b) ("An employee has the right to use compensatory time earned.").

140. *See id.* § 553.26(b) (public employees); *id.* § 553.233 (law enforcement and fire protection employees).

141. 29 U.S.C. § 207(a)(1).

142. *Id.* § 207(e).

143. *See id.* § 207(e)(2); 29 C.F.R. § 778.320.

144. 29 U.S.C. § 207(e)(7).

145. *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 468, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948).

146. *Id.* at 466, 68 S.Ct. 1186. *Accord O'Brien*, 350 F.3d at 288–89; 29 C.F.R. § 778.207 ("The Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials.").

147. *See* 29 U.S.C. § 207(g)(2); 29 C.F.R. § 778.419.

148. 29 U.S.C. § 207(g)(2). *Cf. McCrary v. Weyerhaeuser Co.*, 457 F.2d 862 (9th Cir.1972) (providing different regular rates for driving a bus and participating in logging operations); Wage & Hour Admin. Ltr., 2006 WL 1026417 (Mar. 10, 2006) (allowing different regular rates for law enforcement canine care and ordinary police duties).

149. *See, e.g., Wheeler v. Hampton Township*, 399 F.3d 238, 248 n. 12 (3d Cir.2005); *O'Brien*, 350 F.3d at 296–97.

150. *See* 29 C.F.R. § 778.303.

151. *See id.* § 778.115 (referencing the "regular rate for that week"). *See also id.* § 553.233 ("[W]herever the word 'workweek' is used ... the words 'work period' should be substituted.").

lar rate for that [period] is the weighted average of such rates."[152] Even when an employee's compensation is determined using the "fluctuating workweek" method—in which an employee is paid a percentage of a fixed annual salary regardless of the number of hours worked in a particular week—the regular rate must be individually determined in each work period in accordance with the actual salary received and actual number of hours worked.[153]

## V. DISCUSSION

### A. Exhaustion

■ As a preliminary matter, defendants' claim that they are entitled to summary judgment due to plaintiffs' failure to pursue contractual grievance procedures is denied. Under the terms of the CBAs, grievance measures are limited to five discrete categories of complaints, none of which explicitly or implicitly include a failure to comply with federal employment law. Moreover, the brief mention of compensatory time in the CBA—merely authorizing its use and placing the choice between cash overtime and compensatory time in the hands of the employee—makes no reference to grievance mechanisms.[154] Thus the CBA does not contain the "clear and unmistakable" waiver required to eliminate a federal right to a judicial forum in favor of contractual arbitration.[155]

### B. The Denial of Use Claim

■ Plaintiffs and defendants cross-move for summary judgment on the denial of use claim. Plaintiffs' motion—which claims that all NYPD denials of compensatory time requests violate FLSA—is denied in full. *First*, plaintiffs' claim that defendants' admitted failure to provide alternative dates when denying requests to use compensatory time violates the "reasonable time" requirement is denied as matter of law, as FLSA does not in fact require employers to provide alternative dates. *Second*, plaintiffs' claim that defendants' admitted refusal to call in officers for overtime assignments to cover for other officers' use of compensatory time precludes use of the "undue discretion" defense is denied. FLSA does not always require such a policy as a matter of law,[156] and a material dispute of fact exists concerning whether such a policy would create an undue disruption within the NYPD.[157] *Third*, plaintiffs' claim that front-line supervisors' discretion concerning denials of requests to use compensatory precludes use of the "undue disruption" defense is denied. Discretion in such decisions is not barred as a matter of law, and a material dispute of fact exists concerning how often such discretionary decisions occur outside the reasonable period and do not in fact aim to prevent an undue disruption.[158]

Similarly, defendants have failed to bear their burden to eliminate any genuine issue of material fact concerning the undue disruption defense. Plaintiffs have asserted—with some support—that calling in of-

---

152. *Id.* § 778.115.

153. *See id.* § 778.114(a).

154. *See, e.g.,* 1995 PBA CBA art. III.

155. *Universal Maritime Serv. Corp,* 525 U.S. at 80, 119 S.Ct. 391.

156. *See id.*

157. *Compare* Pl. 56.1 ¶ 4, *and* Pl. Opp. 56.1 ¶ 45, *with* Def. 56.1 ¶ 45.

158. *Compare* 11/3/07 Deposition of John Kanganis, Lieutenant, Assistant to the Deputy Commissioner for Labor Relations, NYPD ("First Kanganis Dep."), Ex. 8 to 6/9/08 Supplemental Declaration of Damon W. Taaffe in Opposition to Defendants' Motion for Summary Judgment ("Second Taaffe Decl."), at 19–24, *with* Def. 56.1 ¶¶ 38–41.

ficers for overtime assignments to cover for other officers' compensatory time would not unduly disrupt NYPD operations, that front-line supervisors use denials for reasons other than preventing an undue disruption, and that some asserted manpower concerns may not have a sufficient basis.[159] Without undisputed proof that supervisors never deny compensatory time requests for impermissible reasons, defendants are not entitled to summary judgment on plaintiffs' denial of use claim. Therefore the factual question of whether and how often NYPD denials of compensatory time requests beyond the reasonable period threshold violate the "undue disruption" limitation must be resolved at trial.

### C. The Forced Accrual Claim

Defendants move for summary judgment on the forced accrual claim, while plaintiffs move for partial summary judgment on the aspect of the claim related to assignments made available solely for compensatory time.

### 1. Compensatory Time–Only Overtime

 There is no factual dispute that defendants offer some overtime assignments based on the precondition that officers agree to be compensated in compensatory time rather than cash. The sole question is whether such a policy is permitted by FLSA. In this particular case—under the governing CBAs—the answer is yes. As described above, the division between cash overtime and compensatory time available to public employees under FLSA is established by the governing

CBA if such an agreement exists. Here, the negotiated agreement between plaintiffs' unions and the NYPD places that decision concerning "all ordered and/or authorized overtime" "at the sole option of the employee."[160] However, the CBA is ambiguous as to whether the election of compensatory time must be made before or after the overtime is assigned. In light of the public policy in favor of reducing the cost to local government of compliance with FLSA,[161] any ambiguity in an agreement concerning the division between compensatory time and cash overtime should be construed to provide maximum flexibility to the public employer. Nothing in the CBA—and therefore nothing in FLSA—prohibits the NYPD from *offering* overtime assignments based on the precondition that officers who accept the offer may only receive compensatory time.[162] Plaintiffs' motion for partial summary judgment concerning the forced accrual claim is denied, and defendants' opposing motion for summary judgment is granted only to the extent that they may *offer* overtime on a compensatory time-only basis.

### 2. Cash Overtime Cap and Cash Overtime Pension Restriction

 Only the defendants have moved for summary judgment concerning plaintiffs' claims regarding a cap on cash overtime and a restriction on cash overtime in the years prior to retirement, and then only on the ground that such restrictions do not exist. Again defendants have failed

---

159. *See, e.g.,* Pl. 56.1 ¶¶ 5–8, Pl. Opp. 5.1 ¶¶ 38–41, 45.

160. 1995 PBA CBA art. III § 1(a). The relevant language in the other CBAs is identical. *See* First Taaffe Decl. ¶¶ 2–3.

161. *Cf. Christensen,* 529 U.S. at 583–84, 120 S.Ct. 1655 (construing section 207(*o*)(5) to

allow maximum use of compensatory time by public employers).

162. This scenario is contrasted with one in which officers *must* work the overtime assignment. In such a situation the NYPD must permit the officer to choose between compensatory time and cash overtime.

to meet their burden on summary judgment. Not only do plaintiffs present substantial evidence concerning the existence of such restrictions,[163] but defendants have made crucial admissions lending credence to plaintiffs' claims. Defendants acknowledge both that they publish a list of officers who have reached thirty-five hours of cash overtime in a single month—albeit in furtherance of a claimed preference for even distribution of overtime among officers—and that they monitor overtime in the years prior to retirement for the express purpose of preventing officers from padding their pensions. Whether or not the NYPD is legally entitled to take such actions is not the subject of defendants' motion. Therefore the question of whether the cap and near-retirement restrictions exist must be resolved at trial.[164]

### D. The Meal Period Defense

Before addressing the three remaining claims, it is necessary to account for defendants' global response to the chart claim, the regular rate claim, and the failure to pay claim: the meal period defense. Plaintiffs simultaneously move to strike this affirmative defense as a matter of law.

■■■ Whether plaintiffs' meal periods are for the predominant benefit of their employer—and therefore included in their hours worked for FLSA purposes—is a fact-intensive question. Moreover, plaintiffs and defendants have both presented extensive evidence concerning officers' freedoms and obligations during the meal period. However, longstanding NYPD practice evinces an agreement to treat meal periods as working hours, including payment for such hours and—more importantly—inclusion of such hours in the NYPD's own FLSA calculations.[165] It is counterintuitive to presume that the repeated and often contentious contract negotiations[166] between the NYPD and plaintiffs' collective bargaining agents failed to take into account this policy decision, as exclusion of meal periods from "working" time would effectively raise the FLSA overtime threshold by fifteen to twenty hours per working period.[167] Nor did the NYPD's negotiators have a different view of meal periods that would indicate a failure to reach an agreement: a side-letter attached to the 2004 Detectives' Endowment Association CBA describes officers as having "worked" tours for their total duration, including the meal period.[168] Therefore the undisputed facts demonstrate that an agreement existed to treat officers' meal periods as working time.

Agreements to treat meals as working time must be respected if they are reasonable. Given the essential duties NYPD officers perform for their employer during their meal period—including maintaining

163. *See* Pl. Opp. 56.1 ¶¶ 50, 54–55.

164. Should the jury find that these policies exist, the Court will determine their legality after trial.

165. Nor has the NYPD unilaterally ceased to include meal periods in its FLSA calculations after arguing before this Court that they are not working time for FLSA purposes. *See* Def. Opp. 56.1 ¶ 31.

166. *See* PBA 2002 Arbitration (demonstrating an inability to reach a negotiated contract); PBA 2008 Arbitration (same).

167. *See* Def. Mem. at 25 ("If, as Defendants contend, the meal periods do not count as hours worked, then up to 20 scheduled hours in each 28–day period ... are *not* FLSA-compensable work hours.").

168. Undated Letter from James F. Hanley, Commissioner of Labor, NYPD to Michael Palladino, President, Detectives' Endowment Association, App. J. to 2004 DEA CBA. *See also* App. J. to 2008 DEA CBA (same).

radio contact, remaining within their command area in order to respond swiftly to crises, responding to both citizen requests and observed criminal activity, and sustaining general alertness—the existing agreement to treat meal periods as work for FLSA purposes is not unreasonable. Therefore I reject defendants' suggestion that its own FLSA records must be recalculated in order to exclude plaintiffs' meal periods from their hours worked. Plaintiffs' meal periods must be included as hours worked in plaintiffs' FLSA calculations. Plaintiffs' motion to strike the meal period defense is granted. With this ruling in mind the remaining claims can now be addressed.

### E. The Chart Claim

■ Plaintiffs and defendants also cross-move for summary judgment on the chart claim. There is no bona fide dispute of material fact concerning the existence of a duty chart combination that periodically assigns officers to work more than the FLSA overtime threshold of 171 hours per twenty-eight day work period. Moreover, officers are not provided with overtime compensation when the sole basis for overtime in a given work period is completion of their duty chart. This violates the FLSA requirement that overtime be paid for work performed in excess of the overtime threshold. Thus plaintiffs' motion for summary judgment on the merits of the chart claim is granted, and defendants' opposing motion for summary judgment—based solely on the meal period defense[169]—is denied. Although plaintiffs have also moved for summary judgment concerning the magnitude of damages, plaintiffs may have been partially compensated for some overtime hours resulting from the chart

claim as a part of their regular salary. Therefore the question of damages on the chart claim must be resolved at trial.

### F. The Regular Rate Claim

■ Plaintiffs and defendants cross-move for summary judgment on the regular rate claim. It is undisputed that the NYPD does not recalculate the regular rate of pay based on the realities of each work period. This is a plain violation of FLSA. Moreover, it is undisputed that the NYPD does not include shift differentials when calculating the regular rate of pay, but shift differentials do not fall into one of the discrete categories of compensation that may be excluded from the regular rate. Finally, it is undisputed that in some cases the failure to recalculate the regular rate in each pay period results in the exclusion of some longevity pay and assignment pay from calculation of the regular rate. Because defendants' meal period defense to the liability incurred under this claim has been rejected, plaintiffs are granted summary judgment on the regular rate claim and defendants' motion for summary judgment on the regular rate claim is denied.

However, plaintiffs have failed to carry their burden to demonstrate that they are entitled to the quantity of damages demanded in their motion for partial summary judgment. Given that plaintiffs have conceded that some recurring shift differentials and assignment pay are included in the NYPD's regular rate,[170] plaintiffs' expert's method of calculating the resultant damages is inadequate.[171] Therefore, the issue of damages on the regular rate claim must be resolved at trial.

---

**169.** *See* Def. Mem. at 25–26.

**170.** *See* Pl. 56.1 ¶ 20.

**171.** *See* Pl. Mem. at 23(describing the calculation as based on a total failure to include night shift differentials).

## G. The Failure to Pay Claim

 It is sharply contested whether any failure to pay for small increments of FLSA overtime results from a refusal by defendants to accept overtime submissions of less than fifteen minutes or whether plaintiffs simply fail to submit such vouchers because officers are not entitled to contractual overtime in such small amounts. Therefore a genuine issue of fact exists concerning the basic premise of the failure to pay claim: that defendants refuse to compensate plaintiffs for FLSA overtime amounting to less than fifteen minutes. Moreover, even assuming arguendo that plaintiffs had proved their claim, several disputes of material facts exist concerning the elements of the Second Circuit's test concerning de minimis time worked. Although the NYPD has conceded that its payroll system is already capable of recording the additional time,[172] neither party has provided evidence concerning the burden of implementing this system if the flow of small overtime vouchers increased dramatically. Moreover, neither party has presented evidence as to the frequency with which such overtime occurs, how often it is recorded, and the aggregate of time actually worked and uncompensated.[173] Therefore both plaintiffs' and defendants' motions for summary judgment on the failure to pay claim must be denied.

## VI. CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment is granted in part and denied in part, and defendants' motion for summary judgment is denied in full. The Clerk of the Court is directed to close these motions (docket numbers 190 and 193).

SO ORDERED.

---

172. Def. 56.1 ¶ 47; *see also* 5/9/08 Stipulation, Ex. 15 to First Taaffe Decl., ¶ 2 (acknowledging ongoing use of Pay Type Code 1403); Simpson Report at 63 (describing Pay Type Code 1403 as scheduled hours worked for overtime totaling less than fifteen minutes).

173. In contrast, plaintiffs' expert simply assumed that every officer performed fifteen minutes of uncompensated work at the end of each tour. *See* Simpson Report at 64. This assumption is entirely speculative.