Keenan M. SCOTT, et al., Plaintiffs,

v.

**CITY OF NEW YORK and The New York City Police Department, Defendants.**

No. 02 Civ. 9530 (SAS).

United States District Court, S.D. New York.

Nov. 10, 2008.

Order Granting Reconsideration in Part Nov. 13, 2008.

Thomas P. Puccio, Esq., Law Offices of Thomas P. Puccio, New York, NY, Gary A. Orseck, Esq., Lawrence S. Robbins, Esq., Damon W. Taaffe, Esq., Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP, Washington, DC, Will Aitchison, Esq., Mark A. Crabtree, Esq., Aitchison & Vick, Inc., Portland, OR, John T. Brennan, Esq., Law Offices of John T. Brennan, Brooklyn, NY, for Plaintiffs.

Lorie E. Almon, Esq., Gerald L. Maatman, Jr., Esq., Peter A. Walker, Esq., Robert S. Witman, Esq., Seyfarth Shaw LLP, James Lemonedes, Georgia Pestana, Assistant Corporation Counsel, New York, NY, for Defendants.

### *OPINION AND ORDER*

SHIRA A. SCHEINDLIN, District Judge:

## I. INTRODUCTION

Over fifteen thousand current and former New York City police officers and detectives ("plaintiffs") assert that the City of New York and the New York City Police Department ("NYPD") (collectively "defendants") systematically violate plaintiffs' overtime rights under the Fair Labor Standards Act ("FLSA").[1] This lawsuit addresses the policies and practices of the nation's largest police department, and plaintiffs claim hundreds of millions of dollars in damages based on defendants' alleged failures concerning the accrual, use, and payment of overtime.

Plaintiffs now move for summary judgment concerning their expert's calculation of damages related to two of their five claims. Because I find that plaintiffs' calculations are based, in part, on several errors of law, their motion for summary judgment is denied. I will, however, explain the conclusions supporting this decision in order to facilitate more accurate calculations as this case proceeds.[2]

## II. BACKGROUND

### A. Procedural Posture

Plaintiffs filed their initial complaint on November 27, 2002, and an amended complaint on February 24, 2003. The amended complaint asserts five distinct claims; two are relevant to this motion. *First,* plaintiffs claim that some regular work schedules contain overtime, for which they are not compensated (the "chart" claim).[3] *Second,* plaintiffs claim that defendants improperly exclude shift differentials and longevity pay when calculating FLSA overtime rates (the "regular rate" claim).[4]

On June 23, 2004, this Court denied defendants' motion to dismiss one of plaintiffs' claims, as well as defendants' motion to join plaintiffs' unions as necessary parties.[5] On December 27, 2004, this Court denied defendants' motion to dismiss the chart claim, the regular rate claim, and another of plaintiffs' claims.[6] Finally, on

---

1. 29 U.S.C. §§ 201–219.

2. If plaintiffs recalculate damages in accordance with these rulings and provide calculations using both a two-year and a three-year statute of limitations, judgment may be entered after willfulness is determined at trial.

3. *See* Amended Complaint ¶¶ 22–31.

4. *See id.* ¶¶ 32–35.

5. *See Scott v. City of New York,* 340 F.Supp.2d 371 (S.D.N.Y.2004).

6. *See Scott v. City of New York,* No. 02 Civ. 9530, 2004 WL 2980135 (S.D.N.Y. Dec. 27, 2004).

August 28, 2008, this Court granted in part and denied in part both parties' cross-motions for summary judgment.[7] In particular, this Court granted summary judgment to plaintiffs as to liability only on their chart and regular rate claims.[8]

## B. Uncontested Facts

### 1. Damages Calculations

Plaintiffs' damages expert—Murray Simpson—has prepared damages figures concerning the chart and regular rate claims. These calculations include seven features that defendants contest. *First,* the calculations do not include officers' semi-annual "holiday pay" as a credit against outstanding FLSA liabilities.[9] *Second,* the calculations apply FLSA credit only against liabilities accrued in the same twenty-eight day "work period" in which the credit is earned. If credit in a single work period exceeds liabilities, the excess credit is effectively lost.[10] *Third,* plaintiffs' calculations include credit for contractual overtime only when officers were compensated in cash. If officers elected to receive compensatory time off in lieu of cash, no credit is included in plain-

tiffs' calculations.[11] *Fourth,* plaintiffs determined an officer's regular rate of pay using only regularly scheduled tours of duty, rather than the total number of hours worked in a given work period.[12] *Fifth,* plaintiffs value compensatory time used based on an officer's base hourly wage, rather than the regular rate of pay.[13] *Sixth,* plaintiffs attribute the hours worked after an individual crosses the statutory overtime threshold to FLSA overtime, rather than permitting the employer to allocate time between contractual and statutory overtime.[14] *Seventh,* plaintiffs calculate damages based on a three-year statute of limitations period, rather than the two-year statute of limitations used for non-willful FLSA violations.[15]

### 2. Holiday Pay

The terms and conditions of plaintiffs' employment by defendants are set forth in the Collective Bargaining Agreements ("CBAs") reached between their unions and the City of New York.[16] The CBAs state, " 'Each employee shall receive eleven (11) paid holidays annually, payments for which shall be made in accord with existing procedures.' "[17] This comports

**7.** *See Scott v. City of New York ("Scott III "),* No. 02 Civ. 9530, 592 F.Supp.2d 386, 2008 WL 4104020 (S.D.N.Y. Aug. 28, 2008).

**8.** *See id.* at 408–10, at *11–*12.

**9.** *See* 9/29/08 Declaration of Murray Simpson, plaintiffs' damages expert ("Simpson Decl."), ¶ 8.

**10.** *See id.* ¶ 10.

**11.** *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment Concerning Damages on Counts III & IV ("Def. Mem.") at 4.

**12.** *See* Simpson Decl. ¶ 5.

**13.** *See* 10/2/08 Deposition of Murray S. Simpson ("Simpson Dep."), plaintiffs' dam-

ages expert, at 155–56, Ex. C to 10/7/08 Declaration of Damon W. Taaffe, plaintiffs' attorney.

**14.** *See* Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment Concerning Damages on Counts III and IV ("Pl. Mem.") at 15.

**15.** Simpson Dep. at 95–96, Ex. B to 10/3/08 Declaration of Lorie E. Almon, defendants' attorney.

**16.** *See* Plaintiffs' Statement of Material Facts Not in Dispute ("Pl. 56.1") ¶¶ 1–2.

**17.** *Id.* (quoting 12/18/95 Patrolmen's Benevolent Association 1995–2000 Agreement ("PBA 1995 CBA"), art. IX, Ex. A to 8/27/08 Declaration of John E. Kanganis, Lieutenant, NYPD ("Kanganis Decl."); 5/7/07 Detectives' En-

with the eleven paid holidays provided to all New York City employees.[18] Unlike the actual work schedules of most city employees, however, officers' regular duty charts do not account for holidays.[19] Officers are ordered to work some holidays and are given regular days off on others.

### 3. Contractual Overtime

The CBAs award overtime for three categories of work. *First,* overtime compensation at a rate of time and one-half is awarded for all work "in excess of forty (40) hours in any week or in excess of the hours required of an employee by reason of the employee's regular duty chart."[20] *Second,* officers are awarded overtime compensation when they are recalled to duty between assigned shifts and released prior to commencement of their next shift.[21] *Third,* patrol officers are awarded overtime for time spent traveling to posts outside of their permanent command.[22] Compensation for this contractual overtime may be taken either in cash or compensatory time off, at the employee's sole option.[23]

### 4. Longevity Pay and Shift Differentials

Under the CBAs, police officers are entitled to longevity payments once they have reached certain thresholds of experience.[24] The CBAs treat these payments as adjustments to basic salaries and include them in tables of officers' yearly "salary rates."[25] In addition, the CBAs provide for shift differentials of ten percent for all hours worked between 4:00 p.m. and 8:00 a.m.[26]

### 5. Bookkeeping

Defendants' current bookkeeping methods place earned *compensatory time* in either a "FLSA bank" or a "non-FLSA bank."[27] These "banks" hold only compensatory time, as cash overtime is disbursed at the end of a work period. These separate tallies distinguish between compensatory time provided as overtime compensation under the CBAs (the non-FLSA bank) and overtime compensation under the FLSA (the FLSA bank). The dividing line between FLSA overtime and non-FLSA overtime is the 171–hour threshold for

dowment Association 2004–2008 Agreement ("DEA 2004 CBA"), art. IX, Ex. H to Kanganis Decl.).

18. *See* Department of Citywide Administrative Services, *Personnel Services Bulletin No. 440–2* (1997), *available at* http://www.nyc.gov/html/dcas/html/resources/440_2r.shtml. Defendants' suggestion that "each officer will work at least 11 holidays a year," Def. Mem. at 2, requires a classification of days not considered holidays for any other city employee as holidays for the NYPD.

19. *See* Pl. 56.1 ¶ 3; Defendants' Counterstatement Pursuant to Local Civil Rule 56.1 ¶ 3. *See also* Def. Mem. at 3 (explaining the system).

20. PBA 1995 CBA, art. III, § 1(a); DEA 2004 CBA, art. III, § 1(a).

21. *See* PBA 1995 CBA, art. IV; DEA 2004 CBA art. IV.

22. *See* PBA 1995 CBA, art. XXI, § 2(a).

23. *See* PBA 1995 CBA, art III, § 1(a); *id.* art. IV, §§ 1–2, 5; *id.* art. XXI, § 3; DEA 2004 CBA, art III, § 1(a); *id.* art. IV, §§ 1–2, 5; *id.* art. XXI, § 3.

24. *See, e.g.,* PBA 1995 CBA, art. VIII; DEA 2004 CBA, art. VIII.

25. PBA 1995 CBA, art. VI, § 1; DEA 2004 CBA, art. VI, § 1.

26. *See, e.g.,* PBA 1995 CBA, art. XX, § a; DEA 2004 CBA, art. XVIII, § a.

27. *See* Defendants' Supplemental Memorandum of Law Concerning Damages ("Def. Supp. Mem.") at 1; Plaintiffs' Response to Defendants' Supplemental Memorandum in Opposition to [Plaintiffs'] Motion for Summary Judgment Concerning Damages on Counts III and IV ("Pl. Supp. Mem.") at 1 n. 1.

statutory overtime for police officers.[28] When designating overtime as FLSA or non-FLSA within a given work period, defendants' payroll system first counts regularly scheduled hours, then overtime for which officers elected to receive compensatory time, then overtime for which officers elected to receive cash.[29] Therefore, under the NYPD's bookkeeping rules, officers will not accrue any time in their FLSA bank unless their regular hours and overtime hours for which they elect to receive compensatory time total more than 171 hours. Overtime hours worked for cash compensation can have no effect on this calculation.

## III. APPLICABLE LAW

### A. Legal Standards

The August 28, 2008 summary judgment opinion laid out the legal standards concerning summary judgment, statutory interpretation, and deference to administrative materials.[30] Those standards continue to govern this case, and the Court assumes familiarity with them for the purpose of this decision.

### B. FLSA Credits

FLSA credits three categories of contractual compensation ("contract overtime") towards overtime compensation mandated by the Act ("statutory overtime").[31] *First,* employers receive credit for "extra compensation provided by a premium rate" for hours worked "in excess" of an employee's regular working hours.[32] *Second,* employers receive credit for "extra compensation provided by a premium rate" of one and one-half times the rate paid for non-overtime for work performed on weekends, holidays, and other days of rest.[33] *Third,* employers receive credit for "extra compensation provided by a premium rate" of one and one-half times the rate paid for non-overtime for work performed "outside" the regular workday or workweek.[34]

On the other hand, several categories of compensation outside of regular wages are not credited against statutory overtime.[35] Only one is relevant to this case:

> payments made for occasional periods when no work is performed due to vacation, holiday, illness ... or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment.[36]

When an employee is "entitled to a certain sum as holiday or vacation pay, whether he works or not, ... the certain sum allocable to holiday or vacation pay is still to be excluded from" the category of supplemental pay that is credited against FLSA obligations.[37] By contrast, where an employee is entitled to some holiday pay regardless of whether he works but will be given

---

**28.** *See* Def. Supp. Mem. at 2; Pl. Supp. Mem. at 1.

**29.** *See* Def. Supp. Mem. at 2; Pl. Supp. Mem. at 1.

**30.** *See Scott III,* 592 F.Supp.2d at 396–400, 2008 WL 4104020, at *4–*5.

**31.** *See* 29 U.S.C. § 207(h)(2).

**32.** *Id.* § 207(e)(5).

**33.** *Id.* § 207(e)(6).

**34.** *Id.* § 207(e)(7).

**35.** *See id.* § 207(h)(1).

**36.** *Id.* § 207(e)(2).

**37.** 29 C.F.R. § 778.219(a).

greater compensation if he is *required* to work on a holiday, the increased compensation is creditable against FLSA obligations.[38]

The FLSA fails to note expressly whether those credits must be applied in the particular workweek or work period in which they accrue. The text of the Act merely states, "Extra compensation . . . shall be creditable toward overtime compensation payable pursuant to this section."[39] However, regulations promulgated by the Department of Labor ("DoL") resolve this ambiguity by stating that an employer may credit extra payments "against the overtime compensation which is due under the statute for hours in excess of 40 in that workweek."[40] DoL further clarified its position in an opinion letter, stating, "[S]urplus overtime premium payments, which may be credited against overtime pay pursuant to section 7(h) of the FLSA, may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods."[41]

### C. Regular Rate Calculation

 The FLSA requires that overtime be paid "at a rate not less than one and one-half times the regular rate at which [the employee] is employed."[42] "While the words 'regular rate' are not defined in the Act, they obviously mean the hourly rate actually paid for the normal, non-overtime work[period]."[43] "As the regular rate of pay cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee, it must be drawn from what happens under the employment contract."[44] The regular rate is " 'properly calculated by adding all of the wages payable for the hours worked . . . and dividing by the total number of hours worked.' "[45] Thus, "[t]hose who receive incentive bonuses in addition to their guaranteed base pay clearly receive a greater regular rate than the minimum base rate."[46]

### D. Compensatory Time

Subject to numerous conditions, state and municipal employees may receive compensation for statutory overtime in the form of cash, compensatory time off, or a combination thereof.[47] However, the statute provides no guidance concerning how compensatory time and cash overtime are to be allocated. The DoL regulations provide only that the mechanics of implementation are governed by "agreements or understandings" between employer and employees,[48] which in this case is limited to

---

**38.** *See id.* § 778.219(b)(1).

**39.** 29 U.S.C. § 207(h)(2).

**40.** 29 C.F.R. § 778.202(c). *Accord id.* § 778.104 ("Each workweek stands alone.").

**41.** Letter from Herbert J. Cohen, Deputy Administrator, U.S. Dep't of Labor, WH–526, 1985 WL 304329 (Dec. 23, 1985).

**42.** 29 U.S.C. § 207(a)(1).

**43.** *Walling v. Helmerich & Payne*, 323 U.S. 37, 40, 65 S.Ct. 11, 89 L.Ed. 29 (1944). *Accord Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 595 (2d Cir.2007).

**44.** *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948).

**45.** *Gorman*, 488 F.3d at 596 (2d Cir.2007) (quoting *Brock v. Wilamowsky*, 833 F.2d 11, 14 (2d Cir.1987)).

**46.** *Walling v. Harnischfeger Corp.*, 325 U.S. 427, 431, 65 S.Ct. 1246, 89 L.Ed. 1711 (1945).

**47.** *See* 29 U.S.C. § 207(*o* ); 29 C.F.R. § 553.23(a)(2).

**48.** 29 C.F.R. § 553.23(a)(2).

the CBAs.[49]

### E. Statute of Limitations

▮ "The FLSA generally provides for a two-year statute of limitations on actions to enforce its provisions, but allows a three-year limitations period for 'a cause of action arising out of a willful violation.'"[50] Proof of willfulness requires a factual showing that the employer either "'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'"[51]

## IV. DISCUSSION

### A. Holiday Pay

Plaintiffs argue that their damages calculations need not credit defendants for semi-annual "holiday pay."[52] The interplay between sections 207(e)(2) and 207(e)(6) of Title 29 of the U.S.Code makes the question simple and the answer difficult. The statute credits the employer if payments supplement regular wages provided on holidays when officers *must work*. The statute does not credit the employer if payments merely compensate for holidays when officers *do not work or choose to work*. Therefore the question of credit turns on whether an officer must work on a particular holiday.

The text of the CBAs suggests that the NYPD provides supplemental payments for a "paid holiday"—*i.e.*, a paid day on which officers need not work.[53] On the other hand, the title of the CBA provision providing holiday pay is "Payment for Holiday Work,"[54] which indicates that all of the relevant supplemental payments compensate officers for working on holidays. Reality lies somewhere in between. Because New York City requires police protection every day of the year, plaintiffs' duty charts do not take holidays into account. In effect, on some holidays officers receive a full days' pay for not working; on others, they are ordered to work and receive a 100% premium on their regular wages.

Therefore, plaintiffs' damages calculations failed to include FLSA credit for holiday payments that reflect days on which an officer was ordered to work when other municipal employees had a paid holiday. However, the damages calculations correctly awarded no credit for holiday payments that reflect days on which an officer did not work or chose not to work.

### B. Application of FLSA Credit

▮ Plaintiffs argue that any credit to which defendants are entitled may be applied only in the work period in which credit accrued.[55] As described above, DoL has taken the position that "surplus overtime premium payments, which may be credited against overtime pay pursuant to

---

**49.** *See* 29 U.S.C. § 207(*o*)(2)(A)(ii) (noting that informal understandings may only be applied when an employee is not covered by a CBA).

**50.** *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir.1999) (quoting 29 U.S.C. § 255(a)).

**51.** *Porter v. New York Univ. School of Law*, 392 F.3d 530, 531 (2d Cir.2004) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (alteration in original)).

**52.** *See* Pl. Mem. at 5–7.

**53.** Pl. 56.1 ¶¶ 1–2. *See also Webster's II New Riverside Dictionary* 586–87 (3d ed. 1994) (defining holiday as "[a] day free from work that one may spend at leisure").

**54.** PBA 1995 CBA, art. IX; DEA 2004 CBA, art. IX.

**55.** *See* Pl. Mem. at 7–10.

section 7(h) of the FLSA, may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods." [56] This Court must apply the agency's interpretation of the Act unless it is not " 'a permissible construction of the statute.' " [57] Although the text of the FLSA is ambiguous concerning the application of credit, both the structure of the Act and its legislative history lend credence to DoL's interpretation.

When calculating statutory overtime, the FLSA uses a single workweek as the basic unit of measurement.[58] In the exceptional case of public law enforcement employees, the statute substitutes a twenty-eight day work period or "tour of duty" for the single workweek.[59] Compensation for overtime in a work period must be paid "on the regular pay day for the period in which such work[period] ends." [60] The requirement protects workers from the imposition of excessive hours by placing an immediate cost on the employer.[61] If employers were allowed to bank credit for contractual overtime against future obligations to pay statutory overtime, it would place workers in the employer's debt, such that they would have to work a certain amount of overtime before they would again receive statutory overtime compensation. Although sophisticated employers would understand the cost of depleting a credit reserve, use of such a reserve system would undermine the full protection created by Congress. If an employer found it had credit to spare as a result of contractually guaranteed payments, it could require an employee to work large blocks of overtime months later without the sting of premium compensation.

Moreover, the legislative history of the FLSA indicates that Congress intended to limit the application of credit. The first incarnation of the credit provision allowed application "toward *any* premium compensation due." [62] However, later amendment

---

**56.** Letter from Herbert J. Cohen, *supra* note 41. A letter is entitled to the full measure of deference when clarifying a formal DoL interpretation. *See Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). The clarified DoL interpretation, 29 C.F.R. § 778.202(c), is in turn entitled to this Court's full deference. *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007).

**57.** *Llanos–Fernandez v. Mukasey*, 535 F.3d 79, 82 (2d Cir.2008) (quoting *Fulani v. FCC*, 49 F.3d 904, 910 (2d Cir.1995)). *Accord Rogers v. City of Troy*, 148 F.3d 52, 57 (2d Cir.1998) (deferring to agency interpretations concerning time-of-payment).

**58.** *See* 29 U.S.C. § 207(a)(1). *See also Roland Elec. Co. v. Black*, 163 F.2d 417, 421 (4th Cir.1947) ("[T]he Act takes as its standard a single workweek consisting of seven consecutive days.").

**59.** 29 U.S.C. § 207(k)(1)(B); 29 C.F.R. § 553.201. DoL regulations note that in such cases the term "work period" should be sub-

stituted for "workweek" in the statutory text. *See* 29 C.F.R. § 553.233.

**60.** 29 C.F.R. § 778.106. Long-standing precedent mandates this prompt accounting requirement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 & n. 20, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). *See also Rogers*, 148 F.3d at 57 ("[W]hat constitutes timely payment must be determined by objective standards—and not solely by reference to the parties' contractual arrangements.").

**61.** *See Howard v. City of Springfield*, 274 F.3d 1141, 1148 (7th Cir.2001) ("The credit provision must be read in the context of the statute as a whole, which is designed to protect workers from the twin evils of excessive work hours and substandard wages.") (citing *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981)).

**62.** Fair Labor Standards Act of 1938 Amendments, Pub. L. No. 81–177, 63 Stat. 466, 466 (1949) (emphasis added).

eliminated the word "any." [63] Logically this excision restricts the application of credit to the standard calculations conducted under the FLSA—calculations made on a workweek or work period basis. Based on both the structure and legislative history of the FLSA, DoL's regulatory position is not only "a permissible construction of the statute;" it is the most reasonable interpretation. [64]

Defendants protest that this conclusion will result in a windfall for plaintiffs at the tax payers' expense. [65] However defendants' suggested alternative—a one-year window for application of FLSA credit—finds no basis in the statutory text; its very arbitrariness evinces that their position is flawed. Nothing in the FLSA required the NYPD to agree to a contract containing overtime provisions that in some aspects exceed those required by the FLSA. Whether attributable to the power of plaintiffs' unions or the City's recognition of the sacrifices police officers make, these payments may not be used as credit against compensation required by the FLSA months after it is received.

Therefore, plaintiffs' damages calculations properly applied FLSA credit only within the work period in which it accrued.

## C. Credit for Contractual Compensatory Time

Defendants also challenge plaintiffs' damages calculations based on their failure to credit defendants for contractual overtime for which officers receive compensatory time rather than cash. [66] Whether or not the FLSA mandates that an employer receives credit for contractual overtime awarded as compensatory time is a question of first impression in the federal courts.

Statutory interpretation "necessarily begins with the 'plain meaning' of a law's text and, absent ambiguity, will generally end there." [67] Section 207(h)(2) of Title 29 of the U.S.Code states, "Extra compensation paid [for specified activities] shall be creditable toward overtime compensation payable pursuant to this section." [68] Nothing in the text of section 207(h) indicates a limitation on the form that compensation may take in order to be creditable. "Absent an express restriction . . . or a clearly stated legislative purpose limiting the statute's plain meaning, a judicial limitation . . . would be an unwarrant-

---

**63.** *See* 29 U.S.C. § 207(h)(2). *See also* Fair Labor Standards Amendments of 1949, Pub. L. No. 81–393, § 7, 63 Stat. 910, 915 (1949) (removing "any").

**64.** There is a division among the circuits concerning this conclusion. *Compare Herman v. Fabri–Centers of America, Inc.,* 308 F.3d 580, 589 (6th Cir.2002), *Howard,* 274 F.3d at 1148–49, *and Reich v. Southern N.E. Telecomm. Corp.,* 892 F.Supp. 389, 405 (D.Conn. 1995), *aff'd* (issue not raised on appeal), 121 F.3d 58 (2d Cir.1997) (applying credit only within a single workweek or work period), *with Kohlheim v. Glynn County,* 915 F.2d 1473, 1481 (11th Cir.1990), *and O'Brien v. Town of Agawam,* 491 F.Supp.2d 170, 175–76 (D.Mass.2007) (allowing credit to be applied outside the workweek or work period in which it accrued). The Second Circuit has

recognized the division of authority but has declined thus far to comment on it. *See Harold Levinson Assocs. v. Chao,* 37 Fed.Appx. 19, 22 (2d Cir.2002). However, *Kohlheim* contains no analysis beyond recitation of the statutory text, and *O'Brien* erred by analogizing accrual of compensatory time into an employee's reserve with the accrual of credit by the employer, despite the lack of a statutory basis for this analogy. I find those nonbinding precedents unpersuasive.

**65.** *See* Def. Mem. at 5.

**66.** *See id.* at 3.

**67.** *Collazos v. United States,* 368 F.3d 190, 196 (2d Cir.2004).

**68.** 29 U.S.C. § 207(h)(2).

ed judicial intrusion into a matter confided to Congress." [69] Therefore, "compensation" must include payment in any permissible form, in this case both cash and compensatory time.

This interpretation is supported by dictionary definitions of the key term: compensation.[70] Webster's II New Riverside University Dictionary defines compensation as "[s]omething given or received as payment or reparation, as for goods, services, or loss." [71] Black's Law Dictionary similarly defines compensation as "[r]emuneration and other benefits received in return for services rendered." [72] There is no doubt that "compensatory time" is given as payment or a benefit in exchange for services rendered by police officers.

Moreover, section 207(o )—the provision that authorizes the use of compensatory time—provides a definition of "overtime compensation" that supports this reading. The statute allows awards of compensatory time to eligible employees "in lieu of overtime compensation," [73] and the statute defines "overtime compensation" as "compensation required by subsection (a)"—in other words cash overtime.[74] However, the statute expressly restricts the use of this definition to the subsection concerning compensatory time.[75] Thus this limited definition of overtime compensation should *not* be applied to the statute as a whole.

Finally, the overarching purpose of the credit provision favors the broader interpretation of "compensation." When Congress first enacted section 207(h), it closed a loophole created by the Supreme Court's decision in *Bay Ridge v. Aaron* that had forced payment of "overtime on overtime"—a statutory premium for overtime on top of any overtime compensation guaranteed in a CBA.[76] Here, when an officer elects to receive compensatory time as remuneration for an hour of contractual overtime, the NYPD must eventually pay regular salary for one and one-half hours of time not worked. If this award did not offset premium compensation required by the FLSA and an officer had already crossed the statutory overtime threshold, the officer would receive another one and one-half hours of statutory compensation for the *same* hour worked, either in cash or compensatory time. Therefore the officer would receive either a total of three hours of compensatory time for one hour of overtime work or one and one-half hours of compensatory time and one and one-half hours worth of cash wages. Particularly where the choice between compensatory time and cash overtime rests solely in the employee's hands, this outcome is clearly against congressional intent.

Therefore plaintiffs' damages calculations improperly failed to credit defen-

---

**69.** *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 115 (2d Cir.1992).

**70.** *See, e.g., United States v. Kozeny*, 541 F.3d 166, 172 (2d Cir.2008) (using a variety of general and legal dictionaries to support the court's perception of the plain meaning of the statutory text).

**71.** *Webster's II New Riverside Dictionary* 290. The New Riverside Dictionary is an authoritative dictionary that has been relied upon by the Second Circuit. *See, e.g., Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d

Cir.2006) (utilizing the New Riverside Dictionary's definition of "jail").

**72.** *Black's Law Dictionary* 301 (8th ed. 2004).

**73.** 29 U.S.C. § 207(o )(1).

**74.** *Id.* § 207(o )(7)(A).

**75.** *See id.* § 207(o )(7).

**76.** *Herman*, 308 F.3d at 587 (citing *Bay Ridge Operating Co.*, 334 U.S. at 446, 68 S.Ct. 1186).

dants for compensatory time awarded as compensation for contractual overtime.

## D. Calculation of the Regular Rate

■ The crux of the dispute between the parties concerning the regular rate is whether the rate is based on compensation for an officer's regular work schedule or whether it must be determined based on all hours an officer has worked, including overtime. The parties have labeled this disagreement "the denominator dispute." [77] The importance of this distinction rests on whether fixed weekly payments must be distributed across the number of hours the officer was *assigned* to work or the number of hours the officer *actually* worked. An employee's regular rate of pay will of course be higher if fixed payments—specifically longevity pay—are spread across fewer hours of work.

The Supreme Court laid out the general principle underlying regular rate calculations in *Walling v. Helmerich & Payne*, where it stated, "While the words 'regular rate' are not defined in the Act, they obviously mean the hourly rate actually paid for the normal, non-overtime workweek." [78] Moreover, several DoL regulations note the Supreme Court's holding in *Walling* and other cases. [79] However, defendants correctly note that the most on-point regulation does not echo the language of *Walling*. [80] Specifically, 29 C.F.R. § 778.209—entitled "Method of inclusion of bonus in regular rate"—states that a bonus payment should be "added to the other earnings of the employee . . . and the total divided by total hours worked." [81] It is unclear whether the regulation refers to the total non-overtime hours worked or the total hours worked including overtime.

"The proper scope of [a regulation] is derived not from reading it in isolation, but from a careful consideration of the complete regulatory scheme . . . against the backdrop of its policies and objectives." [82] Thus any ambiguity in section 778.209 should be resolved to yield a single consistent understanding of the regular rate throughout the DoL FLSA regulations. [83] The basic regulation unambiguously defines the regular rate as "the hourly rate actually paid for the normal, non[-]overtime workweek." [84] Therefore the ambiguous term "total hours worked" denotes the total number of hours worked in the regular workweek.

---

**77.** Pl. Mem. at 11.

**78.** 323 U.S. 37, 40, 65 S.Ct. 11, 89 L.Ed. 29 (1944). *Accord Gorman*, 488 F.3d at 595 ("As the Supreme Court has explained, [the regular rate] is 'the hourly rate actually paid the employee for the normal, non-overtime workweek.'") (quoting *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945)).

**79.** *See, e.g.*, 29 C.F.R. § 778.108.

**80.** *See* Def. Mem. at 11. *See also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir.1993) ("New regulations at variance with prior judicial precedents are upheld unless 'they exceeded the Secretary's authority [or] are arbitrary and capricious.'") (quoting *Heckler v. Campbell*, 461 U.S. 458, 466–68, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)).

**81.** 29 C.F.R. § 778.209(a).

**82.** *United States v. Stansell*, 847 F.2d 609, 614 (9th Cir.1988).

**83.** *Cf. Watson v. United States*, —— U.S. ——, 128 S.Ct. 579, 584, 169 L.Ed.2d 472 (2008) (noting the "paradigm of a statute 'as a symmetrical and coherent regulatory scheme, . . . in which the operative words have a consistent meaning throughout'") (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995)).

**84.** 29 C.F.R. § 778.108 (citing *Youngerman-Reynolds Hardwood Co.*, 325 U.S. at 419, 65 S.Ct. 1242).

Moreover, this is the most logical outcome based on the purpose of the longevity payments at issue. Where longevity payments are characterized as an addition to an employee's base salary—as the CBAs clearly note—those payments reflect the greater value of an experienced employee's labor. Where an employee's compensation is based on the hours he or she works, the value of that experience is received by the employer for every hour that the employee works. It is counterintuitive for longevity pay—as a component of the regular rate—to decrease when an experienced employee volunteers or is ordered to work more hours than a regularly scheduled work period.

Therefore plaintiffs properly calculated the regular rate by basing their computations solely on work performed during the regular work period.

### E. Valuation of Compensatory Time

■ In order to determine the regular rate, it is necessary first to establish how much of an officer's salary is attributable to work he or she performs and how much is paid for compensatory time, or non-working hours.[85] If non-working hours were valued based on plaintiffs' regular rate, a circularity problem would result, as neither the regular rate nor the value of non-working time could be established without first determining the value of the other. In order to avoid that circularity, plaintiffs' expert valued leave using officers' hourly wages, rather than their regular rate of pay.[86] Defendants protest that plaintiffs' method is "arbitrary and based upon assumptions not supported by any law or regulation," but they offer no alternative means to escape the circularity.[87]

The purpose of the regular rate is to determine a fair baseline to compensate workers for overtime employment.[88] Neither the text of the FLSA nor DoL regulations require that the regular rate be used to determine the value of compensatory time or any other non-working time. Thus, although plaintiffs have not identified laws or regulations that support their method of valuation, defendants have also failed to identify legal authority precluding plaintiffs' method.

■ A fair valuation scheme must effectively estimate the true value of compensatory time, in order to facilitate a determination of the regular rate that hews as close as possible to "what happens under the employment contract."[89] In their calculations, plaintiffs divided an officer's bi-weekly base salary and longevity payment by 160.[90] This is the mathematical equivalent of dividing an officer's annual base salary and longevity pay by the number of hours that an officer would be expected to work if he or she worked every tour during the year.[91] DoL regula-

---

**85.** *See* 29 U.S.C. § 207(e)(2) (excluding from the regular rate payments made for time not actually worked).

**86.** *See* Reply Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment Concerning Damages on Counts III and IV ("Reply Mem.") at 6–7.

**87.** Def. Mem. at 14–15.

**88.** *See* 29 U.S.C. § 207(a)(1)

**89.** *Bay Ridge Operating Co.*, 334 U.S. at 464, 68 S.Ct. 1186.

**90.** *See* Def. Mem. at 14.

**91.** An officer who declined to use vacation, sick days, personal days, or compensatory time would work 2088 hours in a year. *See* Undated Expert Witness Report of Murray Simpson, Plaintiffs' Expert, Ex. 14 to 5/9/08 Declaration of Damon W. Taaffe, plaintiffs' attorney, in Support of Plaintiffs' Motion for Partial Summary Judgment, at 38. The number of hours per year, divided by the number of days per year, multiplied by the number of days per work period, equals the number of hours per work period. *I.e.*, 2088 hr/yr ÷

tions do not suggest an alternative means to make such a calculation, and defendants have not provided a fairer method.[92]

Therefore plaintiffs' calculations properly value paid leave using a method that approximates its fair value.

## F. Attribution of Overtime as Contractual or Statutory

█ In order to determine how much of plaintiffs' cash overtime is governed by the FLSA—and therefore subject to FLSA's regular rate requirement—plaintiffs had to determine which overtime hours are contract (or non-FLSA) overtime and which are statutory (or FLSA) overtime. As described above, the NYPD's current bookkeeping methods first count regular hours, then overtime worked for compensatory time, then overtime worked for cash. The line between contract overtime and statutory overtime occurs at 171 hours per work period, as mandated by statute.[93]

The FLSA declares that "no employer shall employ any of [its] employees" for a greater number of hours than the statutory overtime threshold "unless such employee receives compensation for his employment in excess of the hours [permitted] at the rate not less than one and one-half times the regular rate at which he is employed."[94] It does not mention which particular hours are subject to the FLSA; it only asserts that an employer must provide premium compensation subject to the panoply of statutory protections for hours worked in excess of the overtime threshold. Nor do the CBAs speak to the bookkeeping practices that will distinguish between categories of overtime compensation.

The NYPD system does not "exclude[ ] from the FLSA calculus overtime hours worked for cash."[95] Under the current system, plaintiffs receive statutory overtime for the correct number of hours worked beyond the statutory overtime

---

365.25 dy/yr × 28 dy/wp = 160 hr/wp. In fact, the NYPD payroll system currently uses the same method to approximate the regular rate. *See id.*

92. This system is imperfect, but it is necessary because of the absence of an hourly valuation provision in either the CBAs or defendants' payroll system. *Cf.* Simpson Dep. at 156 (describing inclusion of hourly valuations in payroll systems in other municipalities). This calculation will systematically undervalue compensatory time vis-à-vis the regular rate based on a failure to include shift differentials, but the use of compensatory time also deprives officers of the opportunity to work shifts that would increase their regular rate. When duty charts call for a given officer to work *more than* the average number of hours in a given work period, this calculation will undervalue compensatory time. When duty charts call for an officer to work *less than* the average number of hours, the opposite will be true. Nevertheless, this system closely approximates the actual value of plaintiffs' compensatory time.

93. For example, if an officer works 160 hours on her duty chart, 15 hours of overtime for compensatory time, and 10 hours of overtime for cash, she will receive 11 hours of non-FLSA compensatory time, 4 hours of FLSA compensatory time, and 10 hours of FLSA cash overtime. If, on the other hand, an officer works 160 hours on her duty chart, 10 hours of overtime for compensatory time, and 15 hours of overtime for cash, she will receive 10 hours of non-FLSA compensatory time, 1 hour of non-FLSA cash overtime, and 14 hours of FLSA cash overtime.

94. 29 U.S.C. § 207(a).

95. Pl. Supp. Mem. at 1. Nor do plaintiffs believe that this cash overtime is outside the realm of the FLSA, as they claim damages related to improper calculation of the regular rate for these very same cash overtime hours. *See id.* at 1 n. 1 (noting that increasing the amount of statutory compensatory time in turn decreases the amount of statutory cash overtime).

threshold, albeit reflecting the NYPD's preference for applying FLSA protections to cash overtime rather than to compensatory time. The FLSA requires no more.[96] Therefore, plaintiffs' damages calculations impermissibly altered the NYPD's designation of particular overtime hours as either contractual or statutory.

### G. Statute of Limitations

■■■ Application of a three-year statute of limitations period to FLSA claims requires a finding that violations were willful. Plaintiffs argue that this Court's holding on summary judgment that defendants' payroll practices violated the FLSA as a matter of law requires a finding that those violations were also willful as a matter of law.[97] However, proof of a *willful* violation is a distinct and more burdensome inquiry than proof of a mere violation. Simply because this Court found a violation based on undisputed facts at the summary judgment phase does not rule out the possibility that defendants undertook diligent, albeit flawed efforts to comply with the FLSA. As a result there is a genuine dispute of material fact as to whether defendants knew or showed reckless disregard for whether their payroll practices conformed to the FLSA.

## V. CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment concerning

damages on the chart claim and the regular rate claim is denied. Plaintiffs are ordered to recalculate damages in accordance with the principles established in this opinion. The Clerk of the Court is directed to close this motion (docket no. 241).

SO ORDERED.

### OPINION AND ORDER

## I. INTRODUCTION AND BACKGROUND

Over fifteen thousand current and former New York City police officers and detectives ("plaintiffs") assert that the City of New York and the New York City Police Department ("NYPD") (collectively "defendants") systematically violate plaintiffs' overtime rights under the Fair Labor Standards Act ("FLSA").[1] The trial of this action began on November 10, 2008. That same day, this Court issued an opinion and order addressing questions of law related to the calculation of damages in this suit.[2] Plaintiffs immediately made an oral motion for reconsideration of the three sections of the decision in which this Court had ruled in defendants' favor.[3] *First,* this Court had held that the NYPD's semi-annual holiday payments are creditable against FLSA liabilities insofar as they compensate officers for mandatory

---

**96.** Of course the NYPD and the unions are free to include accountings provisions in future CBAs. *See* 29 C.F.R. § 553.23(a)(2) (providing that agreements between employers and employees concerning compensatory time may cover any aspect of the arrangement insofar as it does not violate statutory requirements).

**97.** *See* Reply Mem. at 7.

**1.** 29 U.S.C. §§ 201–219.

**2.** *See Scott v. City of New York ("Scott V "),* No. 02 Civ. 9530, Docket No. 265, 592

F.Supp.2d 475, 2008 WL 5479512 (S.D.N.Y. Nov. 10, 2008). On August 28, 2008, this Court granted summary judgment to plaintiffs on two of their five claims. *See Scott v. City of New York ("Scott III "),* No. 02 Civ. 9530, 592 F.Supp.2d 386, 2008 WL 4104020 (S.D.N.Y. Aug. 28, 2008).

**3.** *See* Trial Transcript ("Tr.") at 302, *Scott v. City of New York,* No. 02 Civ. 9530, 592 F.Supp.2d 475, 2008 WL 5479512 (S.D.N.Y. Nov. 10, 2008).

work on particular holidays.[4] *Second,* this Court had held that compensatory time awarded for overtime required under plaintiffs' collective bargaining agreements ("CBAs") is creditable against FLSA liabilities.[5] *Third,* this Court had held that plaintiffs could not alter defendants' designation of particular hours of overtime as either required solely by defendants' contracts ("non-FLSA overtime") or required by statute ("FLSA overtime").[6]

For the reasons discussed below, plaintiffs' motion for reconsideration is granted. Upon reconsideration of its November 10, 2008 opinion and order, the Court holds that the semi-annual holiday payments are not in fact creditable against FLSA obligations. However, the Court adheres to the remainder of its original decision.

## II. APPLICABLE LAW

■ A motion for reconsideration is governed by Local Rule 6.3 and is appropriate where " 'the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.' "[7] "A motion for reconsideration may also be granted to 'correct a clear error or prevent manifest injustice.' "[8]

Local Rule 6.3 must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court."[9] Courts have repeatedly been forced to warn counsel that such motions should not be made reflexively, to reargue " 'those issues already considered when a party does not like the way the original motion was resolved.' "[10] The purpose of Local Rule 6.3 is to " 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.' "[11]

## III. DISCUSSION

### A. Holiday Pay

■ Plaintiffs' first move for reconsideration concerning whether semi-annual, contractual holiday payments are fully creditable, partially creditable, or not creditable against FLSA obligations. The CBAs state, " 'Each employee shall receive eleven (11) paid holidays annually, payments for which shall be made in accord with existing procedures.' "[12] This

---

4. *See Scott V,* 592 F.Supp.2d at 483–84, at 13–15.

5. *See id.* at 485–87, at 19–22.

6. *See id.* at 489–90, at 28–30.

7. *In re BDC 56 LLC,* 330 F.3d 111, 123 (2d Cir.2003) (quotation omitted).

8. *In re Terrorist Attacks on September 11, 2001,* No. 03 MDL 1570, 2006 WL 708149, at *1 (S.D.N.Y. Mar. 20, 2006) (quoting *Doe v. New York City Dep't of Soc. Servs.,* 709 F.2d 782, 789 (2d Cir.1983)).

9. *DGM Invs., Inc. v. New York Futures Exch., Inc.,* 288 F.Supp.2d 519, 523 (S.D.N.Y.2003) (quotation omitted). *Accord Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995) (holding that a court will deny the motion

when the movant "seeks solely to relitigate an issue already decided").

10. *Joseph v. Manhattan & Bronx Surface Transit Operating Auth.,* No. 96 Civ. 9015, 2006 WL 721862, at *2 (S.D.N.Y. Mar. 22, 2006) (quoting *In re Houbigant, Inc.,* 914 F.Supp. 997, 1001 (S.D.N.Y.1996)).

11. *Naiman v. New York Univ. Hosps. Ctr.,* No. 95 Civ. 6469, 2005 WL 926904, at *1 (S.D.N.Y. Apr. 1, 2005) (quoting *Carolco Pictures, Inc. v. Sirota,* 700 F.Supp. 169, 170 (S.D.N.Y.1988)).

12. 12/18/95 Patrolmen's Benevolent Association 1995–2000 Agreement ("PBA 1995 CBA"), art. IX, Ex. A to 8/27/08 Declaration of John E. Kanganis, Lieutenant, NYPD ("Kanganis Decl."); 5/7/07 Detectives' Endowment

comports with the eleven paid holidays provided to all New York City employees.[13] Unlike the work schedules of most city employees, however, officers' regular duty charts do not account for holidays. Officers are ordered to work some holidays and are given regular days off on others.[14]

As this Court noted in its prior opinion, "When an employee is 'entitled to a certain sum as holiday or vacation pay, whether he works or not, ... the certain sum allocable to holiday or vacation pay is still' [noncreditable]."[15] On the other hand, this Court noted that "where an employee is entitled to some holiday pay regardless of whether he works but will be given greater compensation if he [or she] is *required* to work on a holiday, the increased compensation is creditable against FLSA obligations."[16]

Plaintiffs brought to this Court's attention during oral argument that plaintiffs' holiday payments are provided twice a year with no connection or attribution to particular holidays. Each officer receives identical holiday payments regardless of how many holidays an officer is assigned to work.[17] More importantly, officers who are called in because of increased holiday policing needs receive further compensation beyond the holiday pay, the premium portion of which is creditable against FLSA obligations.[18] Finally, the NYPD does not track which officers work regularly scheduled tours on dates that are holidays for other municipal employees, in order to distinguish between holiday pay that is premium compensation for holidays on which an officer works and holiday pay that is merely an additional payment received on days when an officer does not work.[19]

The contractual holiday payments are therefore more accurately characterized as payments provided whether or not an individual officer works on a particular holiday. Although in theory these payments may compensate for the fact that officers are ordered to work on some holidays, in practice these payments are simply supplemental compensation untethered to any particular holiday work. As a result, they are not creditable against outstanding FLSA obligations. Plaintiffs' damages calculations correctly did not include holiday payments as credits.

## B. Credit for Contractual Compensatory Time

Plaintiffs next move for reconsideration concerning whether contractual overtime payments for which an officer elects to receive compensatory time are creditable against FLSA obligations. The CBAs

---

Association 2004–2008 Agreement ("DEA 2004 CBA"), art. IX, Ex. H to Kanganis Decl.

**13.** *See* Department of Citywide Administrative Services, *Personnel Services Bulletin No. 440–2* (1997), *available at* http://www.nyc.gov/html/dcas/html/resources/440_2r.shtml. Defendants' suggestion that "each officer will work at least 11 holidays a year," Def. Mem. at 2, requires a classification of days not considered holidays for any other city employee as holidays for the NYPD.

**14.** *See* Plaintiffs' Statement of Material Facts Not in Dispute ¶ 3; Defendants' Counter

statement Pursuant to Local Civil Rule 56.1 ¶ 3.

**15.** *Scott V*, 592 F.Supp.2d at 481, at 10 (quoting 29 C.F.R. § 778.219(a)).

**16.** *Id.* (citing 29 C.F.R. § 778.219(b)(1)).

**17.** *See* Tr. at 304–306.

**18.** *See id.* at 306.

**19.** *See* Reply Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment Concerning Damages on Counts III and IV ("Reply Mem."), at 1 n. 1.

state, "All ordered and/or authorized overtime in excess of forty (40) hours in any week or in excess of the hours required of an employee by reason of the employee's regular duty chart ... shall be compensated for either by cash payment or compensatory time off, at the rate of time and one-half, at the sole option of the employee."[20] Under the FLSA, employers receive credit for "extra compensation provided by a premium rate" for hours worked "in excess" of an employee's regular working hours.[21]

Plaintiffs first argue that crediting compensatory time against outstanding FLSA obligations removes an officer's ability to choose between compensatory time and cash payment for overtime worked.[22] Plaintiffs describe a hypothetical officer who the NYPD had failed to pay for fifteen minutes of overtime, and plaintiffs note that the officer will not have the option to choose cash in a back-pay suit because he or she was already paid more than the FLSA requires, albeit in compensatory time.[23] The key flaw in plaintiffs' hypothetical is not the choice of the form of compensation. Rather the officer has already received compensation—regardless of form—such that the employer does not owe any further compensation pursuant to the FLSA.[24] The officer cannot choose between cash and compensatory time because there is no longer any FLSA debt.[25] Moreover, an agreement between employees and a state or municipality permitting the use of compensatory time to fulfill FLSA obligations governs only to the extent that it does not conflict with the Act itself.[26] Therefore, the fact that non-FLSA compensatory time is creditable against FLSA obligations trumps the CBA provision permitting an officer to choose between cash and compensatory time.

In addition, plaintiffs claim that because Congress passed the provision allowing a state or municipality to award compensatory time long after it added the credit provision, the term "compensation" in the credit provision cannot encompass compensatory time.[27] Plaintiffs' theory is that Congress could not have envisioned compensation to include forms other than cash because cash was the only form of FLSA compensation at the time legislators drafted and enacted the credit provision. However, as this Court has previously noted, statutory interpretation "necessarily begins with the 'plain meaning' of a law's text and, absent ambiguity, will generally end there."[28] As it is difficult to ascertain the

---

20. 1995 PBA CBA, art. III; 2004 DEA CBA, art. III.

21. 29 U.S.C. § 207(e)(5). *Accord id.* § 207(h)(2) (providing that hours described in 29 U.S.C. § 207(e)(5) are creditable against FLSA obligations).

22. *See* Tr. at 337.

23. *See id.* at 338.

24. If an officer had previously elected to receive cash overtime and now wished to receive compensatory time for fifteen minutes of overtime for which he or she had not previously been compensated, the choice would be similarly burdened. Nevertheless, plaintiffs do not dispute—nor could they argue—that overtime an officer elected to re-

ceive in cash is creditable against FLSA obligations. *See id.* at 340.

25. Moreover, plaintiffs' hypothetical would only arise in the context of a FLSA back-pay lawsuit. Under plaintiffs' CBAs, time worked beyond an officer's duty chart entitles the officer to overtime, regardless of the hour threshold and credit provisions of the FLSA.

26. *See* 29 C.F.R. § 553.23.

27. *See* Tr. at 342. *See also* Reply Mem. at 4.

28. *Collazos v. United States*, 368 F.3d 190, 196 (2d Cir.2004). *Accord Scott III*, 592 F.Supp.2d at 396–98, 2008 WL 4104020, at *4 ("If and only if the text is ambiguous, 'the

collective intent of 535 legislators, courts focus on the legislative text, which is subject to an up or down vote.[29] Moreover, even if this Court were to find ambiguity in the term "compensation," plaintiffs have pointed out no legislative materials that would indicate congressional intent to limit "compensation" to currently available forms, rather than leaving the term open to forms of compensation made available by future Congresses. It is unreasonable to require that Congress reenact a statute to achieve coherence within an evolving statutory context.

Plaintiffs' motion for reconsideration is denied concerning this Court's holding that non-FLSA compensatory time is creditable against FLSA obligations.

### C. Designation of Overtime as Contractual or Statutory

Plaintiffs last move for reconsideration concerning this Court's determination that plaintiffs are not permitted to designate particular overtime compensation that defendants had labeled non-FLSA as FLSA and vice versa. At the end of a FLSA work period, plaintiffs' bookkeeping system designates some overtime hours as FLSA and some as non-FLSA. The first

171 hours are designated non-FLSA.[30] Defendants' system first counts regularly scheduled working hours, then overtime hours for which an officer elects to receive compensatory time, then overtime hours for which an officer elects cash.[31] Defendants' treat FLSA and non-FLSA cash overtime identically, but they do not apply the full panoply of FLSA protections to non-FLSA compensatory time.[32] Because defendants have no need to track the division between FLSA and non-FLSA cash overtime—as they are treated identically—their FLSA accounting system solely tracks how many of officers' compensatory time hours are governed by FLSA and how many are not.[33]

Plaintiffs would prefer that defendants count cash overtime before compensatory time, as there is little difference between FLSA cash overtime and non-FLSA cash overtime but a vast difference between FLSA compensatory time and non-FLSA compensatory time. Plaintiffs' best argument relies on the unproven assumption that officers work cash overtime at the beginning of a work period—until they reach an alleged cap—and only then do they elect to receive compensatory time. However, plaintiffs seek an equally cate-

court may resort to legislative history to determine the statute's meaning.'" (quoting *Puello v. Bureau of Citizenship and Immigration Servs.*, 511 F.3d 324, 327 (2d Cir.2007))).

**29.** *Cf. Zedner v. United States*, 547 U.S. 489, 509–510, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006) (Scalia, J., concurring) ("I believe that the only language that constitutes 'a Law' within the meaning of the Bicameralism and Presentment Clause of Article I, § 7, and hence the only language adopted in a fashion that entitles it to our attention, is the text of the enacted statute.").

**30.** *See* Tr. at 312.

**31.** *See id.* at 326.

**32.** *See id.* at 327.

**33.** *See id.* at 329. Insofar as defendants do not properly calculate the regular rate that forms the basis for cash overtime payments under FLSA, *see Scott III*, 592 F.Supp.2d at 409–10, 2008 WL 4104020, at *12, the distinction between non-FLSA cash overtime and FLSA cash overtime makes a difference both with regard to plaintiffs' damages and with regard to future FLSA compliance. Plaintiffs have been able to distinguish plaintiffs' non-FLSA cash overtime and FLSA cash overtime under defendants' present system for the purpose of their damages calculations. *See* 11/4/08 Second Supplemental Report of Murray S. Simpson ("Third Simpson Report"), at 3.

gorical solution: counting all cash overtime before all compensatory time.[34]

Simply put, there is no legal authority limiting an employer's discretion to designate particular hours as FLSA or non-FLSA, so long as an employee receives FLSA compensation for the correct number of hours.[35] Theoretically, CBAs could mandate particular accounting rules, but here they do not. Therefore, plaintiffs' motion for reconsideration is denied concerning this Court's holding that the plaintiffs may not change the defendants' designation of particular overtime hours as FLSA overtime or non-FLSA overtime.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion for reconsideration is granted. Upon reconsideration of its November 10, 2008 opinion and order, the Court holds that the semi-annual holiday payments are not creditable against FLSA obligations. However, the Court adheres to the holdings that non-FLSA compensatory time is creditable against FLSA obligations and that the NYPD may choose to count compensatory time before it counts cash overtime when determining which overtime hours should be treated as non-FLSA and which are subject to FLSA protections.

SO ORDERED.

---

**34.** Plaintiffs' assertion that defendants' current system "doesn't consider [cash] hours when they set the plus 171 time frame" is inaccurate. Tr. at 319.

**35.** *See* 29 U.S.C. § 207(a) (requiring premium compensation for work beyond a *statutory* overtime threshold, rather than for particular hours beyond an overtime threshold).